**Kashawn D. WESTON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 182, 2003.

Supreme Court of Delaware.

Submitted: Sept. 16, 2003.
Decided: Sept. 30, 2003.

John F. Brady, Esquire, Georgetown, Delaware, for appellant.

Kim Ayvazian, Esquire, Department of Justice, Georgetown, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

This is an appeal by the defendant-appellant, Kashawn D. Weston. After a contested hearing, the Superior Court found that Weston was in violation of his probation. Weston was resentenced to be incarcerated for four and one-half years pursuant to Del.Code Ann. tit. 11, § 4204(k), followed by various levels of supervised custody and probation.

Weston has raised two issues on appeal. First, he contends that the trial judge abused his discretion in delaying the violation of probation hearing for approximately one and one-half hours so that the State could locate its witnesses. Second, Weston contends that the sentence imposed was excessive. We have concluded that neither of Weston's contentions are meritorious.

### Original Sentence

On August 28, 2000, Weston pleaded guilty in the Sussex County Superior Court to Assault in the Second Degree, a lesser-included offense of Attempted Murder and Possession of a Firearm During the Commission of a Felony. He was sentenced to five years at Level V, suspended after serving three years, with the balance of two years to be served at Level II. On September 17, 2002, an indictment charging Weston with Trafficking in Cocaine, Possession With Intent to Deliver Cocaine

and Possession of Drug Paraphernalia, was filed in the Sussex County Superior Court.

On December 12, 2002, Weston pleaded guilty to Possession With Intent to Deliver Cocaine and violations of probation on the Assault and Firearm offenses. Pursuant to his plea agreement, Weston was sentenced on the drug offense to five years at Level V, with credit for time served, and the balance suspended for nine months at Level IV Home Confinement, followed by four years at Level III. He received two years at Level V, suspended for two years at Level III, for the Firearm offense violation of probation, and was discharged as unimproved from probation on the Assault offense.

### Probation Violations

In December 2002, Weston was placed on Level IV Home Confinement. Among the conditions of his supervision, he was to report any change in employment or residence immediately. According to his probation officer, Amber Esham, Weston violated his curfew schedule on December 28, 30, and 31, 2002 and on January 2, 3 and 6, 2003. According to Esham, there had been no verification of any change in Weston's curfew or employment status.

On January 6, 2003, after receiving a tip from a confidential informant, Probation Officer Mark Dawson of the Governor's Task Force executed an administrative warrant at Weston's residence. As the officer approached the residence, someone opened the door and immediately shut it. Dawson then heard running inside of the residence. After knocking and entering the residence, Dawson observed several people in the living room area, and others at the rear door of the residence. One individual unsuccessfully attempted to flee.

Dawson identified Weston and conducted a personal search of him. No contraband was found. A search of Weston's bedroom, however, uncovered several rounds of ammunition in a plastic bag in a green tote container.

The police found a loaded .357 caliber revolver in a floor vent in a baby's bedroom, a small rock of crack cocaine in the kitchen sink drain and, next to the sink, a small set of digital scales. There was cocaine residue on the kitchen table. The kitchen trashcan contained several torn plastic baggies. The police also found cash in the amount of $3,455 in one of the bedrooms of the residence.

On January 6, 2003, Weston was arrested on new charges after the administrative search was conducted at his residence. At a Fast Track contested violation of probation hearing on March 4, 2003, Weston was found in violation of probation. The Superior Court judge found Weston guilty of violating his probation based on the curfew violations, the evidence showing that Weston's residence was being used for drugs, and evidence showing the possession of bullets and a weapon.

### Hearing Delay Reasonable

Weston's first argument on appeal is that he was prejudiced and reversible error occurred when the Superior Court delayed the probation violation hearing for an hour and a half in order to allow time for State witnesses to arrive. According to Weston, the State's use of a "four corner stall" to get probation and police officers to the hearing interfered with the Superior Court's schedule and created an unreasonable delay. Weston acknowledges that "[r]equests for continuances 'are left to the discretion of a trial judge whose ruling will not be disturbed on appeal unless that ruling is clearly un-

reasonable or capricious.' " [1]

The record reflects that the violation of probation hearing began at approximately 9:45 a.m. on March 4, 2003. The Superior Court indicated that it would handle another case while waiting for the prosecutor to locate the State's witnesses. Thus, there was no inconvenience to the court at that time.

When the court's other business finished an hour later, the State's witnesses still had not arrived. The prosecutor assured the court that they were "en route." The prosecutor explained that the officers had not received their subpoenas.

The proceedings recessed again, and then resumed one-half hour later when the State indicated it could proceed with the alleged curfew violations because probation officer Amber Esham was present. The total delay in the Superior Court proceedings, therefore, was only one and one-half hours.

After Weston appeared in the courtroom, his defense counsel moved to dismiss the violation of probation charges that were not supported by a probation officer present in the courtroom. The Superior Court did not rule on Weston's motion. After the prosecutor assured the Superior Court that subpoenas for the officers had, in fact, been issued, the hearing began at 11:15 a.m. with Esham's testimony. The other officers arrived in the courtroom a short time later. The Superior Court judge permitted them to testify after Esham.

■ The State did not explicitly request a continuance in this case. Nevertheless, the standards for a continuance that were enunciated by this Court in *Secrest v.* *State*,[2] are instructive in analyzing Weston's argument:

First, the party seeking the continuance has the burden of establishing a clear record of the relevant facts relating to the criteria for a continuance, including the length of the requested continuance. Second, the party seeking the continuance must show:

(a) that it was diligent in preparing for the presentation of the testimony;

(b) that the continuance will be likely to satisfy the need to present the testimony; and

(c) that the inconvenience to the Court, opposing parties, witnesses and jurors is insubstantial in relation to the likely prejudice which would result from the denial of the continuance.[3]

The record reflects that the State was diligent in preparing for the presentation of the testimony. The hearing was originally scheduled for February 4th and rescheduled for a contested hearing on February 18th. The State had subpoenas issued for its witnesses on February 11, but the February 18 hearing was cancelled because of snow. The State then had subpoenas issued on February 20 for the rescheduled hearing on March 4. The police officers, however, did not receive the subpoenas. The Superior Court noted on the record that this was the second time in recent weeks that the Delaware State Police had reported that they did not receive subpoenas.

Without these police officers, the State would not have been able to present any testimony. Thus, a one and one-half hour delay was necessary to prosecute the violation hearing, which had already been re-

1. *Secrest v. State*, 679 A.2d 58, 64 (Del.1996) (quoting *Bailey v. State*, 521 A.2d 1069, 1088 (Del.1987)).

2. *Secrest v. State*, 679 A.2d 58 (Del.1996).

3. *Id.* at 66.

scheduled twice. There was no inconvenience to the Superior Court because the judge was able to conduct other business during the delay.

Only Weston and his defense attorney were inconvenienced by the delay. Weston's defense counsel was scheduled to be in the Family Court at 1 p.m. that afternoon. The violation of probation hearing concluded at 12:30 p.m., which was in time for defense counsel to attend the Family Court proceeding. The record reflects it was not an abuse of discretion for the Superior Court to delay the violation of probation proceedings one and one-half hours in order for the State's witnesses to arrive.[4]

### Sentence Appropriate

 Weston's second argument on appeal is that the sentence he received was excessive and that the judge exhibited a closed mind because the judge did not properly consider the nature of the violation but simply reimposed all of Weston's unsuspended jail time. Appellate review of a sentence is limited to whether the sentence is within the statutory limits prescribed by the General Assembly and whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind.[5] When the sentence is within the statutory limits, this Court will not find an abuse of discretion unless it is clear that the sentencing judge relied on impermissible factors or exhibited a closed mind.[6]

A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant.[7] In this case, the judge considered the nature of the violation, in particular, the presence of the drugs, gun and ammunition in Weston's residence. He also considered the character of the defendant. He concluded that Weston was a dangerous man who had been previously involved in violence, who was currently involved in a violent matter, and who was a "smart guy" who knew "what is going on," and had his "eyes wide open."

 The judge must have an open mind for receiving all information related to the question of mitigation.[8] In this case, the judge listened to Weston's claims that the electronic monitoring device must have been broken, that he had gotten permission from an unnamed officer to go to job interviews, that an employer had contacted the authorities about his job and received permission for him to work, as well as Weston's denial of selling drugs. Thus, the record reflects that the judge had an open mind for receiving all the information Weston offered that was related to the issue of mitigation.[9]

The judge concluded the fact that drugs were discovered in Weston's residence approximately three weeks after he was released from jail to be more compelling than Weston's excuses or denials. The record reflects that the reasoning behind the sentence, as expressed by the judge, was that Weston was "a dangerous individual" "involved in violence," who had drugs,

---

**4.** *Id.*

**5.** *Siple v. State,* 701 A.2d 79, 83 (Del.1997); *Mayes v. State,* 604 A.2d 839, 842–43 (Del. 1992).

**6.** *Samuel v. State,* 1997 WL 317362, at *1 (Del.1997).

**7.** *Ellerbe v. State,* 2000 WL 949625, at *1 (Del.2000).

**8.** *Shelton v. State,* 744 A.2d 465, 513 (Del. 1999).

**9.** *See id.*

ammunition, and guns in his house. According to Weston, the reasoning behind his sentence was flawed. Given the evidence presented at the hearing, however, the judge's reasoning was logical and rational.

Weston has not presented any evidence to support his assertion that the judge exhibited a closed mind during sentencing. Conversely, the State's evidence of Weston's probation violations was clear and convincing. Based upon the record, it was entirely appropriate for the judge to sentence Weston to be imprisoned for the remainder of the unsuspended portion of his sentence.

### Conclusion

The judgment of the Superior Court is affirmed.