IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LIONEL HICKMAN, | § | |
| | § | No. 6, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below – Superior Court |
| | § | of the State of Delaware, |
| v. | § | in and for Sussex County |
| | § | |
| STATE OF DELAWARE | § | |
| | § | |
| Plaintiff Below, | § | Cr. I.D. Nos. 1211007824 |
| Appellee. | § | 1305013170 |
| | § | 1212004273 |
| | § | |
| | § | |

Submitted: September 10, 2014
Decided: September 10, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **RIDGELY,** Justices.

**ORDER**

This 10th day of September 2014, it appears to the Court that:

(1)    On January 15, 2013, Hickman was charged by information with Carrying a Concealed Deadly Weapon, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Criminal Mischief over $5,000, and Misdemeanor Theft.  On February 18, 2013, a Sussex County grand jury indicted Hickman with two counts each of drug dealing, Aggravated Possession of a Controlled Substance, PFDCF, and Possession of a Firearm by a Person Prohibited, and one count of Conspiracy Second Degree (collectively, the "Drug

Case"). On May 20, 2013, a grand jury indicted Hickman on two counts each of noncompliance with conditions of bond and terroristic threatening and one count each of endangering the welfare of a child and criminal contempt of a domestic violence protective order.

(2) On November 8, 2013, Hickman resolved two of the cases against him—all but the Drug Case—by pleading guilty to Carrying a Concealed Deadly Weapon ("CCDW") and Noncompliance with Bond. Sentencing pursuant to the plea agreement was set to occur after a presentence investigation and after the conclusion of the Drug Case against Hickman.

(3) On November 26, 2013, Hickman agreed to plead no contest to Maintaining a Drug Property to resolve the Drug Case. The trial court ordered sentencing for the Drug Case to occur after a presentence investigation was completed.

(4) On December 20, 2013, the Superior Court held a sentencing hearing for all three cases against Hickman. The Superior Court sentenced Hickman as follows: CCDW—eight years Level V incarceration, suspended after six years for two years Level IV home confinement; remaining charges—eight years Level V incarceration, suspended for eighteen months Level III probation. The Superior Court also fined Hickman $10,000.

(5)     Hickman argues that the Superior Court abused its discretion in sentencing him when it relied on factual predicates that were false or lacked minimum indicia of reliability.  He specifically points to four pieces of evidence that allegedly should not have been relied upon by the Superior Court as part of its sentencing analysis.

(6)     First, Hickman submits that evidence of his being twice a shooting victim (the "Shooting Evidence") should not have been factored into the sentencing.  There was no evidence introduced that his victimhood was caused by involvement in illegal activity and it should have been viewed merely as a function of his surroundings rather than any choice of his own. Second, Hickman contends that the presence of other weapons in his home (the "Guns Evidence") lacks the necessarily reliability to conclude that he was involved in the drug trade. Third, Hickman disputes the Superior Court's conclusion that he was involved in the drug trade based on the large sums of money he possessed.  Hickman claims that he received the $2,250 that was found on his person from a personal injury settlement rather than from drug activity.  Fourth, Hickman contends that the Superior Court improperly relied on evidence that he had money in his backyard without record support (collectively, the third and fourth pieces of evidence are referred to as the "Money Evidence").  Cumulatively, according to Hickman, these factors are all

false or lacked minimum indicia of reliability such that the Superior Court's sentence based upon that evidence constitutes an abuse of discretion.

(7) The State responds first by noting that Hickman received a sentence that fell within the statutory guidelines for the offenses.[1] Regarding his twice being shot, the State cites the Superior Court's skepticism after Hickman responded that his being robbed and shot on two occasions in a span of three months was simply bad luck. As for the other weapons present in Hickman's home, the State contends that the Superior Court properly relied on statements in the indictment, in which Hickman was charged with possession of multiple firearms.

(8) The State argues that the money found in Hickman's possession (both on his person and in his backyard) was valid evidence upon which the Superior Court could rely. Police had seized $10,000 from Hickman's home when they executed a search warrant, in addition to guns and drugs. Moreover, the only record evidence about the $2,250 as a personal injury settlement comes from

---

[1] CCDW carries a maximum penalty of 8 years of Level V incarceration. Hickman received 8 years Level V suspended after 6 for two years of Level IV Home Confinement, and a fine of $5,000 which is authorized by statute. Noncompliance with bond carries a maximum of 5 years Level V incarceration and a $5,000 fine. Hick was sentenced to 5 years Level V, suspended for 1 year Level III probation and a $5,000 fine. For Maintaining a Drug Property, Hickman faced up to 3 years of Level V incarceration. He received 3 years Level V, suspended after 18 months of Level III probation. Hickman's CCDW sentence did, however, exceed the SENTAC-recommended sentence, but the SENTAC guidelines are "neither mandatory nor binding upon a sentencing judge." *See* (citing *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989).

4

Hickman's own testimony. In fact, the money was recovered when Hickman was arrested after allegedly shooting at his ex-girlfriend's car. The State submits that the trial court's sentence was proper in light of the other relevant facts, including the indictment in the Drug Case.

(9) This Court reviews the imposition of a sentence by the Superior Court for an abuse of discretion.[2] "'Appellate review of a sentence generally ends upon determination that the sentence is within the statutory limits prescribed by the legislature.'"[3] "Where the sentence falls within the statutory limits, we consider only whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[4]

(10) In Delaware, the trial court has broad discretion in determining which information to rely on in imposing a sentence, including information pertaining to the defendant's personal history and behavior, the presentencing report, and other

---

[2] *Kurzmann v. State*, 903 A.2d 702, 714 (Del. 2006).

[3] *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992) (quoting *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989)).

[4] *Kurzmann*, 903 A.2d at 714; s*ee also Owens v. State*, 82 A.3d 730 (Del. 2013) ("If the sentence is within the statutory limits, we will not find an abuse of discretion unless the 'sentence has been imposed on the basis of demonstrably false information or information lacking a minimum indicium of reliability.'" (quoting *Mayes*, 604 A.2d at 843))).

sources.[5]  After reviewing the record, Hickman's assertion that the four pieces of evidence are either false or lack the minimum indicia of reliability is unfounded.

(11)  First, the Superior Court properly exercised its discretion when it discredited Hickman's theory that being a victim in two robberies and shootings in the span of three months was nothing more than bad luck.  The Superior Court expressed obvious skepticism about Hickman's theory at the sentencing hearing:

> The Court: You just happen to be extremely unlucky of being shot up twice by people that could have been associated with the drug business, you got robbed twice, they took your stuff and shot you and that happened twice in how many months?
>
> Hickman:  Three.
>
> The Court:  Three months.  You are just saying that is really bad luck?
> . . .
>
> Hickman:  Your Honor, I'm telling you the God's honest truth.
>
> The Court:  Just bad luck, okay. . . .

(12)  The circumstances of the case warranted the Court's skepticism and consideration of the evidence before it.  In Hickman's Drug Case, he was charged with two counts of Drug Dealing and two counts of Aggravated Possession of a Controlled Substance.  Trial had already begun before Hickman entered into a plea agreement with the State.  The Superior Court had access to the search warrant in the Drug Case, which included affidavits from two confidential informants, and

---

[5] *Mayes*, 604 A.2d at 842 (internal quotation marks omitted).

was entitled to consider "responsible unsworn out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance."[6] Thus, the Superior Court did not abuse its discretion in relying on the evidence of Hickman's involvement in two previous robberies and shootings.

(13) Second, the Superior Court appropriately relied on evidence that Hickman possessed other firearms. The trial court noted that Mr. Hickman possessed both a .45 caliber handgun as well as an AK-47 assault rifle and thus could rely on evidence that Hickman possessed other weapons.[7] At the sentencing hearing, the State highlighted its evidence that "[Hickman] ha[d] the drum magazine for an AK-47 and that AK-47 was found under the steps of the house next to a giant suitcase full of marijuana." The Superior Court noted the context in which all of the events occurred to support its conclusion: "He was in a violent world. He participated in a violent world. He was the victim of the violent world. He shot his gun off and he had the other weapons in the house, large sums of money, large amounts of drugs. He was in the business." This conclusion is

---

[6] *Mayes*, 604 A.2d at 845.

[7] At the sentencing hearing, the Superior Court stated: "He has got, I think a .45 caliber that he shot up the car with. When he is arrested and the .45 caliber casings are on him. He's got an AK-47. He knows about the AK-47 because he says the police lied, they didn't find it in the closet of his room, it was in the shed. He knew exactly about the AK-47. It was either in his room or where he put it in the shed."

7

further supported by the State's evidence that "[i]n his bedroom at the house on Brickyard Road, he has digital scales, he has plastic baggies . . . ."

(14) Third, the Superior Court properly exercised its discretion in discrediting Hickman's contention that the $2,250 was the proceeds of a personal injury settlement. The following exchange occurred at the sentencing hearing:

> The Court: How did you get $2,250 if you weren't working?
>
> Hickman:  If [sic] got a settlement, Your Honor.  I had a car accident, I even showed him the settlement.  He got a copy of the papers.  I had got a settlement.  It was $10,000, a car accident, yeah.  I worked at Wal-Mart for four years, Sears for three years.
>
> The Court:  When did you last work at Wal-Mart?
>
> Hickman: In 2011.  I think 2011.
>
> The Court:  2011.  You saved thousands of dollars from Wal-Mart?
>
> Hickman:  I collected unemployment.
>
> The Court:  How much did you get a week from unemployment?
>
> Hickman:  It was close to $200 every week.
>
> The Court:  And you were saving thousands of dollars?
>
> Hickman:  Yes, Your Honor.  It's not hard to do, yes.
>
> Defense Attorney:  He indicated to me that was the proceeds from a personal injury settlement.
>
> The Court:  Thousands of dollars?  Thousands of dollars in the home that he admits that he has pled guilty to for [sic] maintaining drugs? Thousands of dollars, Mr. Gill.

8

(15) The Superior Court' skepticism was well-founded, given the thousands of dollars police found on Hickman's person and that Hickman admitted to maintaining a drug property. In his Reply Brief, Hickman maintains "There is nothing to show that [the money] is not the proceeds from a settlement." However, Hickman never produced any evidence of the settlement for the Superior Court to consider other than his own word. Thus, there was no reliable evidence that the $2,250 was in fact from a personal injury settlement. The Superior Court did not abuse its discretion in evaluating this piece of evidence in its sentencing decision.

(16) Finally, the Superior Court did not abuse its discretion in stating that it believed that Hickman still had cash stashed in his backyard.[8] The Superior Court was privy to the factual circumstances of the case, including the evidence produced at the limited Drug Case trial, and drew a permissible inference based upon that evidence.

---

[8] The comment is also not the type that qualifies as judicial vindictiveness or bias, or a closed mind. *See, e.g.*, *Cruz v. State*, 990 A.2d 409 (Del. 2010) (closed mindedness); *Dabney v. State*, 12 A.3d 1101 (Del. 2009) (bias); *Weston v. State*, 832 A.2d 742 (Del. 2003) (closed mindedness).

NOW, THEREFORE, IT IS ORDERED, that the judgment of convictions of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Randy J. Holland*

Justice