# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                          )
    v.                    )    I.D. No.: 1908004392
                          )
JOSHUA RIVERA,             )
                          )
    Defendant.             )


*Upon Defendant's Motion for Correction of Sentence***:**

**DENIED.**

Submitted: February 15, 2022
Decided: May 9, 2022


## MEMORANDUM OPINION AND ORDER


Amanda D. Buckworth, Esquire, Christina L. Ruggiero, Esquire, Delaware Department of Justice, Attorneys for the State of Delaware.

Michael W. Modica, Esquire, Attorney for the Defendant.


**Adams, J.**

Defendant Joshua Rivera timely filed a Motion for Correction of Sentence on January 12, 2022. For the following reasons, the Court finds that the sentence imposed is appropriate. Defendant's Motion for Correction of Sentence is, therefore, **DENIED.**

## BACKGROUND

On June 21, 2021, after a four-day jury trial in this matter, Defendant was found guilty as to the following charges: (1) Attempted Kidnapping First Degree; (2) Attempted Robbery First Degree; and (3) Assault Third Degree. The Court sentenced Defendant on December 17, 2021. At sentencing, the State recommended Defendant be sentenced for ten years at level V, to be broken down by charge at the Court's discretion. After reviewing the parties' sentencing memorandums and the presentence investigation, presiding over a sentencing hearing, and listening to the victim impact statement and Defendant's allocution, the Court sentenced Defendant as follows:

| ID No. | Charge | Sentence | SENTAC Guideline |
|---|---|---|---|
| 1908004392 | Attempted Kidnapping | 15 years Level V, suspended after 5 years for 18 months Level IV (DOC Discretion), suspended after 6 months for 1 year Level III probation. | *Statutory Range*: 2-25 years at Level V (2 years min/man); *Presumptive Sentence[1]*: 2-5 years at Level V |

---

[1] Class B Violent Felonies, including Attempted Kidnapping and Attempted Robbery First Degree, do not include any Acceptance of Responsibility Guidelines.

2

| 1908004392 | Attempted Robbery First Degree | 15 years Level V, suspended after 5 years for 18 months Level IV (DOC Discretion), suspended after 6 months for 1 year Level III probation. | *Statutory Range*: 2-25 years at Level V (2 years min/man); *Presumptive Sentence*: 2-5 years at Level V |
|---|---|---|---|
| 1908004392 | Assault Third Degree | 1 year Level V, suspended for 1 year Level IV (DOC discretion), suspended after 6 months for 12 months Level III probation. | *Statutory Range:* 0-1 year at level V *Presumptive Sentence:* up to 12 months at level II |

In imposing this sentence, the Court followed the recommendation of the State for non-suspended Level V time. The sentence also comports with the SENTAC guidelines for each offense.

In Defendant's Motion for Correction of Sentence, Defendant moves to correct the sentence imposed in this case because it was "imposed in an illegal manner."[2] Specifically, Defendant argues that the Court erred by sentencing him "more harshly" because: (1) Defendant exercised his constitutional right to trial; and (2) the Court purportedly relied on uncharged misconduct not found by the jury, or contained in the trial record, as the basis for Defendant's sentence.

---

*See* Delaware Sentencing Accountability Commission, SENTAC Benchbook (2021-2022) at 2, [hereinafter SENTAC Benchbook].

[2] D.I. 46 at ¶3.

## ANALYSIS

Superior Court Rules of Criminal Procedure Rule 35(a) permits the Court to correct an illegal sentence at any time and to correct a sentence imposed in an illegal manner within 90 days after the sentence is imposed.[3]   The Supreme Court of Delaware has held that Rule 35 has a "narrow function;" that is, to correct an "illegal *sentence*, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence."[4]

As such, "[r]elief under Rule 35(a) is available 'when the sentence imposed exceeds the statutorily-authorized limits, [or] violates the Double Jeopardy Clause…'"[5]  "A sentence is also illegal if it 'is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize."[6]

The Supreme Court has also made clear that "[a]ppellate review of sentences is extremely limited," and "appellate review of a sentence generally ends upon determination that the sentence is within statutory limits prescribed by the

---

[3]    Super. Ct. Crim. R. 35(a)-(b).

[4]    *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998) (citing *Hill v. United States*, 368 U.S. 424, 430 (1962)) (emphasis in original).

[5]    *Brittingham*, 705 A.2d at 578 (citing *United States v. Pavlico*, 961 F.2d 440, 443 (4th Cir. 1992)).

[6]    *Brittingham*, 705 A.2d at 878 (quoting *United States v. Dougherty*, 106 F.3d 1514, 1515 (10th Cir. 1997).

legislature."[7]   A sentence that exceeds SENTAC guidelines, but within the maximum allowed by statute, will not give rise to a legal or constitutional right of appeal.[8]  As such, so long as the sentencing judge did not rely upon false or unreliable information, exhibit judicial vindictiveness or bias, or exhibit a closed mind, a sentence is generally not reviewable.[9]

Defendant, in his Motion, does not cite any of the recognized reasons under Rule 35 for the Court to correct his sentence.  Rather, Defendant objects to certain aspects of the sentencing hearing, including: discussion with the State regarding its sentencing recommendation, implications that the Court imposed a "trial tax," and comments made by the Court during sentencing.  Each of Defendant's arguments must be rejected.

1.    <u>The Court Did Not Punish Defendant for Exercising his Constitutional Right to a Trial by Jury</u>

During the Sentencing Hearing, the Court had a discussion with the State regarding the State's recommended sentence of ten years.  The Court also noted that the sentencing was not the result of a plea, but after a jury trial where the victim took the stand and "had to relive probably one of the worst days of her life."  Defendant

---

[7]    *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992).
[8]    *Laboy v. State*, 663 A.2d 487, at *1, 1995 WL 389720, (Del. 1995) (TABLE) (quoting *Gaines v. State*, 571 A.2d 756, 767 (Del. 1990)).
[9]    *Id.*

argues that, in doing so, the Court impermissibly punished Defendant for exercising his constitutional right to trial by jury.

This is not so. The Court did not punish the Defendant for electing to have a jury trial. The Court, in asking the State about its sentencing recommendation of a total of ten years, was simply asking why the State's recommendation had not changed from the offer of ten years in the plea agreement prior to trial. In response, the State noted that while Defendant did not accept responsibility in the Presentencing Investigation Report ("PSI"), an aggravating factor, that he was cooperative with police, admitted to everything that he did and was "apologetic" in the PSI. The State also did not want to impose a "trial tax," because the Defendant had a Constitutional right to trial. A court's effort to fully understand the rationale behind a sentencing recommendation is far from unconstitutional. In fact, as recognized by the Supreme Court of the United States, "possession of the greatest information possible is essential to the selection of an appropriate sentence."[10]

Although not stated explicitly on the record, the Court agreed with the conclusion not to impose a so-called "trial tax" or "trial penalty."[11] Rather, after

---

[10] *Lockett v. Ohio*, 428 U.S. 586, 603 (1978).

[11] In Defendant's Motion, his counsel cited to *The New York Trial Penalty: The Constitutional Right to Trial Under Attack."* In this report, the Committee defined the trial penalty as "the substantial difference between the sentence offered prior to trial versus the sentence a defendant receives after trial." *Id.* at 8. Here, the Court imposed the exact same non-suspended sentence – 10 years at Level 5 – that was

6

reviewing the sentencing memorandums from both parties, reviewing the PSI, and listening to each party's sentencing presentation (including the victim impact statement and Defendant's allocution), the Court followed the State's recommendation and did not exceed SENTAC guidelines. Thus, Defendant's challenge does not give rise to a legal or constitutional right of appeal.[12]

2. The Discussion of the "Kill List" Was Not Impermissible

Defendant also argues, without any case law or other support, that the Court's reference to a "kill list" was impermissible. As a preliminary matter, Defendant has waived his right to object to the "kill list" in his Motion because he did not object to the use of the term in the State's sentencing memorandum, the pre-Sentence Investigation Report, the State's presentation at the sentencing hearing, or the Court's ruling during sentencing.[13]

Even if Defendant has not waived this argument, the Supreme Court of Delaware has made clear that "a sentencing court has broad discretion in determining what information to rely on from a presentencing report and related sources."[14] A sentencing court can consider "information pertaining to a defendant's personal

---

offered as part of the plea prior to trial. Therefore, the Court could not have imposed a "trial penalty" under this definition.

[12] *Laboy*, 1995 WL 389720, at *1.

[13] *See* State's Response to the Defendant's Motion for Correction of Sentence at 6.

[14] *Mayes v. State*, 604 A.2d 389 (Del. 1992).

7

history and behavior which is not confined exclusively to conduct for which that defendant was convicted."[15]

This view is supported by the United States Constitution, the Supreme Court of the United States, and federal courts that have held that the evidentiary rules of trial do not apply to sentencing.[16] To craft an individualized and appropriate sentence, a sentencing courts must have "the fullest information possible concerning the defendant's life and characteristics."[17] As the Supreme Court of the United States explained, "modern concepts individualizing punishment have made it all the more necessary that a judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."[18]

Thus, sentencing courts have wide discretion in the sources and types of evidence used to determine an appropriate sentence and are "specifically entitled to rely upon information regarding unproven crimes."[19] The Supreme Court of Delaware held that it would not find an abuse of discretion unless it is clear the information was demonstrably false or lacked a minimal indicium of reliability.[20]

---

[15] *Id.* at 842 (quoting *Lake v. State*, 1984 WL 997111, at *1 (Del. 1984).
[16] *Id.*
[17] *Id.* (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)).
[18] *Williams*, 337 U.S. at 247.
[19] *Mayes*, 604 A.2d at 842.
[20] *Id.* at 843.

The reference to the "kill list" was not demonstrably false and there was a sufficient indicium of reliability in the evidence supporting the use of the term. Information pertaining to the "kill list" appeared in the PSI and the State's sentencing memorandum, both of which the Court reviewed in preparing for the sentencing hearing. Defendant wrote the victim's name and phone number on two pieces of notebook paper[21] where Defendant also wrote, "Wait for Amber, do what you have to do." This same piece of paper also included names of other individuals with whom the Defendant worked and their phone numbers.

The sentencing court in *Mayes v. State*[22] reviewed and considered information found in the presentence report from the victim and the victim's family that the defendant committed crimes more severe than those to which he pleaded guilty. On appeal, the Supreme Court of Delaware affirmed the sentence. The Court held that, so long as such information is not demonstrably false or lacks a minimal indicium of reliability, a sentencing court has broad discretion in determining what information to rely on from a presentence report.[23] The fact that such evidence was not admissible at trial does not prohibit a sentencing judge from considering such

---

[21] State's Opposition at Ex. E.
[22] 604 A.2d 839 (Del. 1992).
[23] *Id.* at 843.

evidence.[24]  Therefore, it was proper for the Court to consider the pieces of the notebook paper and the term given to the pages by the police at sentencing.

### 3. The Court Exhibited an Open Mind at Sentencing

Although not specifically raised in the Motion, Defendant indicates by certain references that the Court exhibited a closed mind during sentencing.[25]  There is no evidence in the record to support such a conclusion.

A judge must have an open mind for receiving all information related to sentencing.[26]  A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant.[27]

Prior to Defendant's sentencing on December 17, 2021, the Court reviewed sentencing memoranda from the State and Defendant, reviewed Defendant's PSI, conducted a thorough Guilty but Mentally Ill hearing during which the Court reviewed expert reports from two doctors, and held a sentencing hearing where the Court heard the victim's impact statement and Defendant's allocution.  After hearing the sentencing recommendations from the State and Defendant, the Court recessed to consider all of the information before ordering Defendant's sentence.

---

[24]  *Id.* at 842, n. 5.
[25]  *See* Motion at Footnote 1.
[26]  *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).
[27]  *Id.*

10

The sentence ordered by the Court was based on the nature of Defendant's crimes, the recommendations and supporting explanations by both parties, the mitigating factors presented by Defendant and the PSI, and the relevant aggravating factors present in this case. The Court had an open mind for receiving all of the information offered. Thus, the Court did not exhibit a closed mind during sentencing.

## CONCLUSION

Defendant's sentence was issued after considering all relevant and permissible information. Defendant's sentence is within statutory limits and SENTAC guidelines. Defendant's sentence is, therefore, appropriate and Defendant's Motion for Correction of Sentence is Denied.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**