IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEJOYNAY FERGUSON, | § | |
| | § | No. 223, 2021 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. N1909003282 |
| STATE OF DELAWARE | § | |
| | § | |
| Appellee. | § | |

Submitted: May 25, 2022
Decided: August 3, 2022

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**

Nicole Walker, Esquire (*Argued*) and Elliot Margules, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant, DeJoynay Ferguson.

Carolyn S. Hake, Esquire, Delaware Department of Justice, Wilmington, Delaware, for Appellee, State of Delaware.

**VAUGHN**, Justice:

The Appellant, DeJoynay Ferguson, pled guilty in Superior Court to one count of Murder by Abuse or Neglect in the First Degree, six counts of Child Abuse in the First Degree, and two counts of Child Abuse in the Second Degree. The plea was made pursuant to a plea agreement under which the State entered a *nolle prosequi* as to other remaining charges. Murder by Abuse or Neglect in the First Degree is a Class A felony with a sentence range from a minimum of 15 years at Supervision Level V to a maximum of life in prison. The sentencing judge imposed a sentence of life in prison. He also sentenced her to ten years at Level V on each of the Child Abuse in the First Degree charges, suspended after two years on each. He sentenced her to probation on the two counts of Child Abuse in the Second Degree. Ferguson appeals her sentences. She contends that the sentencing judge sentenced her for the sole purpose of retribution; that he sentenced her with a closed mind; that he was unwilling to consider the mitigation evidence and arguments she presented; and that her sentence violates her right to due process.

**FACTS AND PROCEDURAL HISTORY**

In January 2019, at the age of 18, Ferguson began working at the Little People Child Development Center, a daycare facility in Bear, Delaware. At that time, Ferguson's only experience in childcare was a three-month stint at another daycare in Delaware. Because of this lack of experience, Ferguson was initially hired as a teacher's aide in the infant room. However, after she had been in that position for

2

two months, the lead teacher who supervised Ferguson was terminated from employment, and Ferguson was left to handle the infant room alone with minimal experience or training.

At her sentencing, Ferguson admitted that she was "in way over my head."[1] Unfortunately, she turned to abuse to maintain control of the infant room. Beginning in June 2019 and continuing through September 2019, video surveillance from the daycare shows Ferguson smothering three children on 28 different days, sometimes multiple times a day, and physically abusing two additional children. Ferguson's conduct finally came to a head on September 5, 2019, when she suffocated I.T., a healthy four month-old girl, to death. Video surveillance from that day shows that less than three hours after I.T.'s mother dropped her off at daycare, Ferguson placed her hand over I.T.'s mouth and nose and suffocated her, causing her death. Almost 30 minutes later, when Ferguson realized that I.T. was unresponsive, she began to perform CPR on her and eventually called for help. Ferguson was 19 years-old at the time of the murder.

When questioned by police, Ferguson initially denied harming I.T. However, after she was confronted with the events that transpired in the video, Ferguson admitted that she "put [her] hand over [I.T.'s] mouth and her nose until she stopped breathing and then [she] proceeded to pick her up and put her inside of her crib face

---

[1] App. to Opening Br. at A252.

3

down."[2]    When asked why, Ferguson responded that it was done "[o]ut of aggression" because there were "multiple babies crying at the same time."[3] Ferguson admitted that she knew I.T. had "stopped gasping"[4] for breath and that when she took her hand off I.T.'s mouth, she made one small gasp but "wasn't breathing anymore."[5]

Ferguson claimed that she did not intend to kill I.T. and was only trying to stop her from crying. Ferguson told police that when the babies would cry, she would feel a tightness in her chest, and she later told forensic psychologist Dr. Laura Cooney-Koss that "after putting [I.T.] back in her crib, [she] was feeling more relaxed . . . because she had been able to release her anger and resolve the source of stress."[6]    The act of suffocating the infants was a tactic Ferguson employed consistently between July 2019 to September 2019. She told police that she changed her method of suffocation over time to make it more effective.

Ferguson was charged by indictment with one count of Murder by Abuse or Neglect in the First Degree, 48 counts of Child Abuse in the First Degree, and four counts of Child Abuse in the Second Degree. The charges involved five children. Ferguson's guilty pleas involved three of the five children, I.T., J.M., and K.Mu.

---

[2] *Id*. at A89-90.
[3] *Id*. at A89, A102.
[4] *Id*. at A89-90.
[5] *Id*. at A89, A101.
[6] *Id.* at A176.

4

The parties did not agree on a recommended sentence.

The Truth-In-Sentencing Guilty Plea Form specified that the maximum penalty for the crimes Ferguson pled guilty to was life plus 154 years. The minimum mandatory time at Level V, which the court was obligated to impose, was 27 years (15 years on the Murder by Abuse or Neglect charge and two years for each of the six counts of Child Abuse in the First Degree). The Truth-In-Sentencing guidelines called for a range of time at Level V from 27 years (15 years on the Murder by Abuse or Neglect charge and two years for each of the six counts of Child Abuse in the First Degree) to 45 years at Level V (15 years on the Murder by Abuse or Neglect charge and five years for each of the six counts of Child Abuse in the First Degree). The court ordered a presentence investigation.

Prior to sentencing, the court was provided with several documents meant to aid in its decision. The defense provided the court and the presentence office with a psychological evaluation performed by Dr. Cooney-Koss. Dr. Cooney-Koss's written report is extensive and discusses such matters as the trauma Ferguson was still experiencing from the sudden death of her father three years earlier; the neurological immaturity of teenagers like Ferguson; her remorse and her sincere attempt to understand her own conduct; her mental health diagnosis, which included Bipolar I Disorder and other mental conditions; the impact that Ferguson's youth, mental health, and lack of coping skills had on her conduct; the impact Ferguson's

5

age likely had in her decision-making; her lack of a criminal history; and her amenability to rehabilitation. The sentencing judge also received the presentence investigation report. The presentence officer prepared the report based on an interview with Ferguson and a review of the police reports, the psychological report, and statements by the victims' families. Ultimately, the presentence officer was unclear as to what actually motivated Ferguson to harm the children. The judge was also provided with a sentencing memorandum from the State, which included written submissions from the victims' families and 11 clips from the video surveillance. The defense also supplied a sentencing memorandum, which relied significantly on mitigation evidence, including a letter of remorse from Ferguson, seven character letters from her family and friends, and Dr. Cooney-Koss's evaluation.

Ferguson's mother addressed the court and explained that as a child Ferguson "showed compassion and helpfulness"[7] to others. She explained the degree to which her father's death had affected Ferguson emotionally. She recognized the seriousness of Ferguson's conduct, but noted that it was out of character for the girl she knew. She informed the court that she believed Ferguson was amenable to rehabilitation and that "with medication and treatment DeJoynay can be a positive young lady in society."[8]

---

[7] *Id*. at A198.
[8] *Id*. at A199.

One friend, who has known Ferguson since childhood, told the judge that she was shocked by Ferguson's conduct because she had known her to be nothing but "a vibrant, loving person with a serving heart."[9]  Another friend said that Ferguson had always provided "a helping hand"[10] to others.  She also explained that Ferguson was "doing very well since taking her medication on a regular basis"[11] and that "[s]he still struggles with what has happened and still can't understand how she could do something like that."[12]

At sentencing, the judge began by inviting family members to speak and noting, "I have read voluminous correspondence and presentencing materials from many different parties in this case."[13]  I.T.'s mother addressed the court and talked about the loss of her daughter.  J.M.'s mother also spoke to the court and discussed her fears about the long-term effects Ferguson's abuse will have on J.M.'s mental and physical health.  K.Mu.'s parents also addressed the court and explained that at three years-old, their daughter now suffers from nightmares, emotional anxiety, and separation anxiety.

Ferguson was also given the opportunity to speak and expressed remorse for her actions.

---

[9] *Id*. at A202.
[10] *Id*. at A206.
[11] *Id*.
[12] *Id*.
[13] *Id*. at A210.

7

Defense counsel's primary argument was that Ferguson made reckless decisions rooted in the neurological immaturity of her youth, complicated by her difficulty in regulating her emotions and tolerating frustration that stemmed from her then-undiagnosed mental health issues. Her decision-making, defense counsel argued, was exacerbated by her lack of training, experience, and supervision. Counsel also pointed out that she "takes full responsibility for her actions"[14] and that "[s]he pled guilty at the earliest opportunity possible."[15] Defense counsel also argued that Ferguson acknowledged "the reprehensibility and senselessness of her actions, and feels great remorse for the pain she has caused so many people . . . She will forever live with regret, knowing that she caused the victims and their families immense and unimaginable pain."[16]

The State recommended a 65-year Level V sentence: 35 years for First Degree Murder by Abuse or Neglect and five years each on the six counts of First Degree Child Abuse. The State recommended probation for the Second Degree Child Abuse charges. The State cited five aggravating factors: (1) excessive cruelty; (2) need for correctional treatment; (3) undue depreciation of offense; (4) prior abuse of victim; and (5) vulnerability of the victim. The State highlighted the consistency of the abuse in making its recommendation.

---

[14] *Id.* at A195.
[15] *Id.*
[16] *Id.*

When he imposed a life sentence for the charge of Murder by Abuse or

Neglect in the First Degree, the judge made the following remarks:

> I'll say one of the things that was salient to me in reading all of the materials was as, frankly, pointed out by counsel, the d[earth] of materials indicating what I would have expected to see, inter-generational abuse or great privations for her growing up. I didn't see that. I saw a child who basically grew up as most children do. Maybe I don't have everything, but certainly had enough to succeed.
>
> *****
>
> This case is shocking. Not only in its brutality, but in the utter depraved violation of trust placed in the hands of caregivers by parents with little or no choice in the matter.
>
> I have considered carefully the comments of all counsel, of each of the victims' families, of the defendant, the many additional submissions I had received. At the end of the day, I am unable to conclude that a sentence of a term of years is the just and fair sentence. A term of years would certainly mean that Ms. Ferguson would spend a great many years in prison, but her release would be an eventual inevitability. It would be a date she could circle on the calendar.
>
> I cannot square the idea of Ms. Ferguson's inevitable release with the idea of smothering a four month old baby to death. This is particularly so when the smothering death occurred at the end of a pattern of smothering babies in order to get them to be still while changing their diapers.
>
> A sentence to a term of years would not fairly express the outrage of any society at the completely senseless killing of one of its infant children by someone entrusted to its care.

It is, therefore, the judgment of the Court that the sentence on the count of murder in the first degree by abuse or negligent should be a life sentence.[17]

## STANDARD OF REVIEW

Appellate review of a sentence is limited to whether the sentence is within the statutory limits prescribed by the General Assembly and whether it is (1) based on factual predicates that are false, impermissible, or lack minimal reliability or (2) the result of a closed mind or judicial vindictiveness or bias.[18] "When the sentence is within the statutory limits, this Court will not find an abuse of discretion unless it is clear that the sentencing judge relied on impermissible factors or exhibited a closed mind."[19] Put differently, "a defendant has no legal or constitutional right to appeal a statutorily authorized sentence simply because it does not conform to the sentencing guidelines established by the Sentencing Accountability Commission."[20]

## DISCUSSION

Because this sentence falls within the statutory limits, our review is limited to whether the sentence is (1) based on factual predicates that are false, impermissible, or lack minimal reliability or (2) the result of a closed mind or judicial vindictiveness or bias.[21] Ferguson does not contend that the sentence was based on inaccurate or

---

[17] *Id*. at A255-258.
[18] *Cruz v. State*, 990 A.2d 409, 416 (Del. 2010) (en banc).
[19] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).
[20] *Mayes v. State*, 604 A.2d 839, 845 (Del. 1992).
[21] *Cruz*, 990 A.2d at 416.

unreliable facts, so we need only consider whether the sentencing judge made his decision with a closed mind, vindictiveness, or bias. "A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[22]

Ferguson argues that the sentencing judge violated her due process rights by sentencing her without considering the mitigation evidence summarized above. To prove the judge's closed-mindedness in sentencing, Ferguson points to his comments, and lack thereof, at the sentencing hearing, which Ferguson contends "lay bare that the sole purpose of the sentences is retribution and that he did not consider"[23] the mitigation evidence. She claims that he ignored her early acceptance of responsibility, Dr. Cooney-Koss's in-depth forensic psychological evaluation, the additional mitigation submissions, Ferguson's youth, her remorse and amenability to rehabilitation, and her serious mental health issues. Ferguson contends that the judge's limited remarks, which do not include a discussion of such matters as her age, mental health, remorse, or lack of criminal history, show that his mind was closed to this mitigation evidence.

She also contends that the disproportionality of her sentences is inconsistent with the principles of *Miller v. Alabama*.[24] In *Miller*, which held that a mandatory

---

[22] *Weston*, 832 A.2d at 746.
[23] Opening Br. at 26.
[24] 567 U.S. 460 (2012).

sentence of life imprisonment without parole cannot be imposed on a juvenile, the court discusses the mitigating effects of a defendant's youth at the time of an offense. Ferguson emphasizes the disproportionality of the sentence to show that the judge had a closed mind. She contends that since 2004, no defendant has received a life sentence for crimes related to the death of a child and has provided us with a list of 33 such cases. This is despite being the youngest defendant on this list.

Ferguson further argues that while the judge did mention that he had considered comments and submissions of the parties, the record reveals that the sentence he imposed was not that of an open-minded jurist. She points specifically to the judge's comments about a "d[earth] of materials indicating what I would have expected to see, inter-generational abuse or privations for her growing up"[25] as an indication that these were the only types of mitigation materials the judge was open to consider. She also argues that his comment that he could not "square the idea of Ms. Ferguson's inevitable release with the idea of smothering a four-month-old baby to death"[26] implies that the judge was concerned only with the severity of the crime and not any of the mitigating factors. Ferguson contends that the judge's limited remarks, which do not include a discussion of such matters as her age, mental health, remorse, or lack of criminal history, show that his mind was closed to mitigation

---

[25] App. to Opening Br. at A255.
[26] *Id*. at A257.

12

evidence.[27]

We have carefully considered Ferguson's arguments. Notwithstanding those arguments, we are not persuaded that the judge sentenced Ferguson with a closed mind when he imposed Ferguson's sentences. A sentencing court has broad discretion in determining what information to rely on when making its determination.[28] Here, the sentencing judge ordered a presentence investigation, and both parties submitted extensive information prior to sentencing. The judge began the sentencing hearing by remarking that he had "read voluminous correspondence and presentencing materials from many different parties in this case."[29] The judge then heard from the victims' families, Ferguson herself, and from both sides regarding mitigating and aggravating factors. After these presentations, he again stated, "I have considered carefully the comments of all counsel, of each of the victims' families, of the defendant, the many additional submissions I had received."[30] While it is clear that the judge was not persuaded by Ferguson's mitigation evidence, on this record we cannot conclude that the judge ignored, or

---

[27] In a footnote Ferguson also asserts that it is unclear as to whether some of her mitigation documents, and specifically the psychological report, were given to the court for review because they were never docketed. The record shows, however, that defense counsel sent the report to the judge and the presentence office, the report was referenced in the presentence report, and the defense cited it in counsel's memorandum and at the hearing. It appears to us that the sentencing judge was fully informed when making his determination.

[28] *Mayes v. State*, 604 A.2d 839, 843 (Del. 1992).

[29] App. to Opening Br. at A210.

[30] *Id*. at A257.

failed to consider, the mitigation evidence and argument she offered, or sentenced her with a closed, vindictive, or biased mind.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is

**AFFIRMED**.