IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DARREN GINGERICH, | § | |
| | § | No. 195, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID Nos: 2305009603, 2305008265, |
| | § | 2305008063 (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: May 7, 2025
Decided: June 30, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 30th day of June, 2025, after consideration of the parties' briefs and the record on appeal it appears to the Court that:

(1)    Darren Gingerich seeks review of his sentence for kidnapping in the second degree, possession of a firearm during the commission of a felony ("PFDCF"), arson in the second degree, and three counts of rape in the third degree. After Gingerich entered guilty pleas to these offenses, the court sentenced him to 123 years of Level V incarceration—the statutory maximum sentence—suspended after 55 years for decreasing levels of supervision.  During the sentencing hearing, the court remarked that Gingerich "probably" has "a rotten soul" and that his actions in

this case were "simply inhuman, diabolical, [and] demonic."[1] Gingerich now appeals his sentence, arguing that the court did not have an open mind when sentencing him, and requests a new sentencing hearing with a different judicial officer. For the reasons explained below, we affirm.

(2) Because there was no trial, we draw our statement of the underlying facts from the sentencing record.[2] Gingerich and his wife began fostering a girl named S.G. when she was about five years old. Before that, S.G. had been sexually abused in her previous foster home. When S.G. was about eight years old, Gingerich and his wife adopted her.[3] For the next ten years, from the time she was eight years old until the time she was eighteen, Gingerich sexually abused S.G.[4] Gingerich's ongoing sexual abuse of S.G. did not come to light until May 2023 when Gingerich kidnapped S.G. and set fire to his family's home.

(3) In June 2023, a grand jury returned a 21-count indictment against Gingerich. He was charged with aggravated menacing; kidnapping in the second degree; possession of a deadly weapon during the commission of a felony

---

[1] App. to Opening Br. at A86.
[2] The sentencing record includes, among other things, the relevant arrest warrants, the indictment, the plea agreement signed by Gingerich, the truth in sentencing guilty plea form signed by Gingerich, and transcript of the plea colloquy. *See id.* at A11–61.
[3] *Id.* at A26.
[4] The record is conflicting as to whether Gingerich began abusing S.G. when she was eight or ten. The parties agree that the abuse began in 2013 and continued for ten years. *See* Opening Br. at 3; Answering Br. at 3. The record indicates that S.G. was born in 2005, which would have made her approximately eight years old when Gingerich started abusing her in 2013. *See* App. to Opening Br. at A15, A30 (arrest warrants stating that S.G. was born in 2005).

("PDWDCF");[5] terroristic threatening; malicious interference with emergency communications; offensive touching; arson in the second degree; sexual abuse of a child by a person in position of trust, authority, or supervision in the second degree; obscenity; attempted rape in the second degree; continuous sexual abuse of a child; four counts of rape in the second degree; and six counts of unlawful sexual contact in the first degree.

(4)     In January 2024, Gingerich pleaded guilty to PFDCF, kidnapping in the second degree, arson in the second degree, and three counts of rape in the third degree. The State entered a *nolle prosequi* on the remaining charges. Gingerich faced a minimum mandatory sentence of nine years Level V incarceration and a maximum sentence of 123 years. Under the plea agreement, the State agreed to limit its sentencing recommendation to 40 years of Level V incarceration. For his part, Gingerich agreed to request no less than ten years of Level V incarceration. The parties agreed that a presentence investigation should be conducted. After conducting a plea colloquy, the court found that Gingerich's plea was made knowingly, intelligently, and voluntarily and accepted it.

(5)     On April 19, 2024, the Superior Court held a sentencing hearing and allowed both Gingerich and the State to be heard. Gingerich's defense counsel

---

[5] The parties later agreed to amend the indictment to change the PDWDCF charge to a PFDCF charge. *See* App. to Opening Br. at A45–46.

3

acknowledged the severity of Gingerich's crimes but nevertheless urged the court to consider mitigating factors—namely Gingerich's lack of criminal history—before sentencing him. In the State's view, however, there were no mitigating factors for the court to consider, and the State asked the court to impose a sentence of at least 30 years. After the prosecutor and defense counsel presented argument, the court allowed Gingerich to speak. Gingerich apologized to the people he had hurt and said, "Whether I get 10 or 30 years, it would be what I deserve."[6]

(6) The court opened its remarks by stating, "So, Mr. Gingerich, I have to tell you that this is one of the most disturbing cases that I have known, seen, [or] been associated with."[7] The court continued, saying to Gingerich,

> You made some statements here today. I accept them. But I -- I can't put a finger on what to blame for this evil that you did. *I don't know if* it was your drinking, your upbringing, *you just have a rotten soul*, or all of the above.
>
> *Probably all of the above*.
>
> Your childhood probably explains some things.
>
> But the fact that you brought this young girl into your home after she had already been in a terribly abusive setting, brought her in under the guise that you were going to give her a wonderful, loving, caring place to live, and a family to live with, was just simply *inhuman, diabolical, demonic*.[8]

---

[6] *Id.* at A82.
[7] *Id.* at A85.
[8] *Id.* at A86 (emphasis added).

(7)     After considering both the mitigating and aggravating factors, as well as the presentence investigation report and victim-impact statements, the court, as mentioned earlier, sentenced Gingerich to 123 years of Level V incarceration, suspended after 55 years for decreasing levels of supervision.

(8)     We review the Superior Court's sentencing of a criminal defendant for abuse of discretion.[9]  When crafting a sentence, a trial judge "has broad discretion to consider 'information pertaining to a defendant's personal history and behavior which is not confined exclusively to conduct for which the defendant was convicted.'"[10]  Additionally, when sentencing a defendant, the trial court has broad discretion to "determi[ne] what information to rely on from a presentence report and related sources."[11]  When the sentence imposed is within the statutory limits, we will not find that the trial court abused its discretion "unless it is clear that the sentencing judge relied on impermissible factors or exhibited a closed mind."[12]

(9)     Here, Gingerich concedes that the Superior Court's sentence fell within the statutory limits.  Gingerich's argument on appeal is that the Superior Court

---

[9] *Kurzmann v. State*, 903 A.2d 702, 714 (Del. 2006).
[10] *Wallace v. State*, 362 A.3d 708, 2024 WL 3874151, at *5 (Del. Aug. 20, 2024) (TABLE) (quoting *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992)).
[11] *Mayes*, 604 A.2d at 843.
[12] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).  *See also Ferguson v. State*, 283 A.3d 74, 79 (Del. 2022) (citing *Cruz v. State*, 990 A.2d 409, 416 (Del. 2010)) ("Appellate review of a sentence is limited to whether the sentence is within the statutory limits prescribed by the General Assembly and whether it is (1) based on factual predicates that are false, impermissible, or lack minimal reliability or (2) the result of a closed mind or judicial vindictiveness or bias.").

sentenced him with a closed mind. The court's closed-mindedness, Gingerich argues, is evidenced by the court's remarks that Gingerich "probably" has a "rotten soul" and that his actions in this case were "simply inhuman, demonic, [and] diabolical."[13] Gingerich claims that, because the court had a closed mind, it never seriously considered the mitigating evidence presented by defense counsel at the sentencing hearing.

(10) A trial judge "sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[14] It is "not improper for a sentencing judge to mount the bench with some preconceived notion about the proper sentence to be imposed."[15] During sentencing, the trial court must "have an open mind for receiving all information related to the question of mitigation."[16]

(11) Our review of the sentencing record convinces us that the court did not sentence Gingerich with a closed mind or abuse its discretion. After making its initial remarks, the court gave a detailed account of the case. It considered the underlying facts, the victim-impact statements of S.G. and Gingerich's wife, the relevant mitigating and aggravating factors, and the presentence investigation report.

---

[13] App. to Opening Br. at A86.
[14] *Ferguson*, 283 A.3d at 79 (quoting *Weston*, 832 A.2d at 746).
[15] *Osburn v. State*, 224 A.2d 52, 53 (Del. 1966).
[16] *Weston*, 832 A.2d at 746 (citing *Shelton v. State*, 744 A.2d 465, 513 (Del. 1999)).

The court acknowledged that "somehow" Gingerich had no prior convictions and that was a mitigating factor to consider.[17] In the court's own words, however, "there [are] numerous -- probably more aggravating factors in this case than any other case [it] ha[d] seen."[18] Specifically, the court found the following aggravating factors applicable to this case: (i) excessive cruelty; (ii) need for correctional treatment; (iii) major economic offense for burning the family's home; (iv) vulnerability of the victim; (v) child domestic abuse; and (vi) offense against a child.[19]

(12) Although the court's conjecture concerning the state of Gingerich's soul could be viewed as beyond the court's purview, we are satisfied that its sentence was the product of a thoughtful consideration of the evidence, including the mitigating factors. In short, Gingerich has failed to demonstrate that the Superior Court sentenced him with a closed mind.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[17] App. to Opening Br. at A93.
[18] *Id.*
[19] *See id.* at A93–94.