IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSHUA RIVERA, | § | |
| | § | No. 313, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1908004392 (N) |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: September 13, 2023
Decided: November 7, 2023

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## <u>ORDER</u>

On this 7th day of November, 2023, after consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, Joshua Rivera, filed this appeal from the Superior Court's denial of his motion for correction of sentence. The court sentenced Rivera to a total of 31 years at Level V incarceration, suspended after 10 years, after a jury convicted him of attempted first-degree kidnapping, attempted first-degree robbery, and third-degree assault. Rivera argues that his sentence should be reversed because the Superior Court abused its discretion by characterizing certain evidence as a "kill list"

and by remarking about the toll that trial took on the victim. We affirm the court's Opinion denying Rivera's motion for correction of sentence (the "Motion"), but we remand so the court may correct Rivera's Level IV sentence for his misdemeanor assault conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

(2) On August 7, 2019, Rivera attempted to kidnap his co-worker, Owens, when she arrived at Lums Pond State Park for work. As Owens was walking toward the boathouse, Rivera approached her, pointed what appeared to be a gun at her, and threatened to shoot her if she did not give him her cell phone.[1] Rivera then forced Owens to return to his vehicle and ordered her to get into his car.[2] Owens refused to do so, and, after an altercation, Owens got ahold of the gun and struck Rivera in the head with it.[3] Owens then noticed the gun was light and possibly not real and managed to break away from Rivera. She ran to a park pavilion where a group of people assisted her in calling the police.[4] Rivera collected the gun and Owens's cell phone and drove away in his vehicle.[5] Owens suffered scrapes to her knees, elbows, and arms, a gash on her shin, and various bruises.[6]

---

[1] App. to Answering Br. at B1 (Trial Tr.).
[2] *Id*. at B1–B2.
[3] *Id.* at B3.
[4] *Id.* at B4.
[5] *Id.*
[6] *Id.*

(3)   As police were speaking with Owens, Rivera returned to the area in his car.[7] Police arrested him and obtained a search warrant for his car.[8] The subsequent search of Rivera's car uncovered his cell phone, an unloaded magazine for an Airsoft aerosol handgun, an unused zip tie, and various articles of clothing that appeared to have bloodstains on them.[9] Police also found cable cuffs in the front pocket of a pair of khaki shorts and a wallet with a Wal-Mart receipt for duct tape, wire cutters, and cable ties, all of which Rivera had purchased the day before the attack.[10]

(4)   Additionally, police found two crumpled pages from a notebook.[11] One of these pages listed various names and phone numbers, including Owens's, and outlined a list of supplies, including starting fluid, acetone, bleach, rope, zip ties, a gun with or without bullets, pills, and a bandana.[12] The other page stated to "wait" for Owens at 9:50, bring different clothes or a disguise, get food and drinks, and "do what you have to do."[13] In addition to a cooler with a salad and multiple bottled drinks, police found a backpack containing zip ties, nitrile disposable gloves, a

---

[7] *Id.* at B6.
[8] *Id*. at B7.
[9] *Id.* at B8.
[10] *Id*. at B9.
[11] *Id.* at B21.
[12] *Id.* at B22–23.
[13] *Id*. at B24.

bandana, sleeping pills, wire cutters, rope, and duct tape.[14] Police located in an industrial park an aerosol handgun along with Owens's cell phone and bank card.[15]

(5) Police also obtained a warrant to search Rivera's cell phone.[16] The resulting search revealed that two days before the attack, Rivera searched the internet for information on how to make someone sexually uncomfortable and how to use a pressure point or ether to render someone unconscious.[17]

(6) After a four-day trial that began on June 15, 2021,[18] the jury found Rivera guilty of attempted first-degree robbery,[19] attempted first-degree kidnapping, and third-degree assault.[20]

(7) On September 17, 2021, the Superior Court sentenced Rivera to fifteen years at Level V, suspended after five years for eighteen months at Level IV for the Attempted Kidnapping charge, fifteen years at Level V, suspended after five years for eighteen months at Level IV for the Attempted Robbery charge, and one year at Level V, suspended for eighteen months at Level IV, suspended after six months for twelve months Level III probation for the Assault Third Degree charge.[21] The court

---

[14] App. to Opening Br. at A133 (Presentence Investigative Report).
[15] *Id.*
[16] App. to Answering Br. at B13 (Trial Tr.).
[17] *Id.* at B14–17 (Trial Tr.).
[18] App. to Opening Br. at A6 (Superior Court Criminal Docket).
[19] As a lesser-included offense of first-degree robbery.
[20] App. to Opening Br. at A14 (Verdict Form).
[21] *Id.* at A19–23 (Sentencing Order). Aside from the probation term of his third-degree assault conviction, Rivera's confinement term falls within the statutory limits.

4

ordered Rivera's terms of confinement to run consecutively, but his probation terms to run concurrently.[22]

(8)    At sentencing, the State recommended a ten-year unsuspended Level V sentence followed by eighteen months of probation.[23]  The court then inquired why the State's recommendation had not changed since offering Rivera a pretrial plea, asking the State: "you had agreed to recommend no less than ten years for the plea. Ms. Owens had to testify through trial, she's now had to come here today and gave a victim impact statement. Why is your recommendation still only ten years?"[24]  The State responded that Rivera had been cooperative and apologetic, and the State did not want to impose a "trial tax" on Rivera by increasing its recommended sentence.[25] The State also said it believed "ten years to be the appropriate sentence here."[26]

(9)    Later, while imposing its sentence, the court listed the items found in Rivera's car, including what "appeared to be a kill list."[27]  The court went on to note, "that the sentencing was not the result of a plea, but rather, after full jury trial forcing not only Ms. Owens to take the stand and relive the events of this day and the effects on her but also causing the State to [expend] significant resources."[28]

---

[22] *Id*. at A19–21 (Sentencing Order).
[23] *Id.* at A83, A85–86 (Sentencing Tr.).
[24] *Id*. at A86.
[25] *Id*. at A87.
[26] *Id.*
[27] *Id.* at A99.
[28] *Id.*

(10)     Rivera moved to correct his sentence under Superior Court Criminal Rule 35(a) on the basis that the trial court impermissibly considered: (1) Rivera's decision to exercise his constitutional right to a jury trial, and (2) disputed uncharged misconduct as sentencing factors.[29]  In its Opinion denying Rivera's Motion, the trial court stated that it neither punished Rivera for asserting his trial rights nor relied on impermissible factual predicates when crafting his sentence.[30]  Rivera then moved for reargument.[31]  The Superior Court again denied the motion, finding that Rivera had neither provided the court with any overlooked controlling precedent nor demonstrated the court had misapprehended material facts.[32]

(11)     On appeal, Rivera again argues that the court abused its discretion because it relied on improper considerations.[33]  Specifically, he contends that the sentencing court demonstrated bias against him and relied on impermissible factual predicates when it pointed out his choice to pursue a trial rather than accept a plea bargain.[34]  Additionally, Rivera argues that the court abused its discretion when it considered uncharged conduct—the "kill list"—because it "was not germane to [Rivera's] convictions."[35]

---

[29] *Id.* at A104–111 (Motion for Correction of Sentence).
[30] *State v. Rivera*, 2022 WL 1448214 (Del. Super. May 9, 2022) [Hereinafter "Superior Court Opinion"].
[31] App. to Opening Br. at A157–65 (Motion for Reargument).
[32] *State v. Rivera*, 2022 WL 3088137 at *1 (Del. Super. Aug. 3, 2022).
[33] Opening Br. at 10–11.
[34] *Id.* at 20–21.
[35] *Id.* at 24–25.

## ANALYSIS

(12) This Court reviews the denial of a motion for correction of a sentence under Superior Court Rule 35(a) for abuse of discretion.[36] A sentencing court abuses its discretion when the sentence "is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[37] A sentencing court exhibits a closed mind when "the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[38]

### A. The Superior Court did not penalize Rivera for asserting his right to trial.

(13) Rivera first argues that the sentencing court impermissibly considered his decision to exercise his right to trial when it sentenced him. Specifically, Rivera contends that the court's comments that the victim was "forced" to testify and the State expended "significant resources" in preparing for trial demonstrate that the court penalized him for exercising his constitutional right to trial.[39]

---

[36] *Fountain v. State*, 100 A.3d 1021, 2014 WL 4102069 at *1 (Del. Aug. 19, 2014) (TABLE).

[37] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003); *Fink v. State*, 817 A.2d 781, 791 (Del. 2003) ("this Court will not find error of law or abuse of discretion unless it is clear from the record that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicia of reliability.").

[38] *Weston*, 832 A.2d at 746.

[39] App. to Opening Br. at A99 (Sentencing Tr.); Opening Br. at 20. Rivera also contends that the court's discussion with the prosecutor regarding why the State recommended the same amount of level V time as its initial plea offer further demonstrates that it penalized him for exercising his trial rights. *Id*. at 21.

7

(14)     Although the court did refer to the trial's effects on Owens and the State, the record does not reflect that the court relied on Rivera's choice when sentencing him.  Rather, after considering the parties' positions, the court ultimately adopted the State's sentencing recommendation, imposing the same amount of the Level V time that the State initially offered in a plea.[40]  In its Opinion, the court explained, "[a]lthough not stated explicitly on the record, the [c]ourt agreed with the [State's] conclusion not to impose a so-called 'trial tax' or 'trial penalty.'"[41]

(15)     Rivera correctly notes that it is axiomatic that a court may not penalize a defendant for asserting their right to trial.[42]  Although a court may not enhance a sentence based on a defendant's assertion of their trial right, a sentencing court may consider the effects of the defendant's decision to pursue trial on the legitimacy of their claim of remorse.[43]

---

[40] App. to Opening Br. at A86 (Sentencing Tr.); Superior Court Opinion at *3.

[41] Superior Court Opinion at *3.

[42] *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); *U.S. v. Saunders*, 973 F.2d 1354, 1362 (7th Cir. 1992) (" It is well established under the so-called unconstitutional conditions doctrine that a defendant may not be subjected to more severe punishment for exercising his or her constitutional right to stand trial."); *U.S. v. Frost*, 914 F.2d 756, 774 (6th Cir. 1990) ("it is improper for a district judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt.").

[43] *U.S. v. Hernandez*, 894 F.3d 1104, 1110 (9th Cir. 2018) (Court vacated sentence and remanded for trial court to explain chosen sentence where sentencing court "emphasized [defendant]'s decision to go to trial five separate times during the sentencing hearing."); *Alabama v. Smith*, 490 U.S. 794, 801 (1989) ("We think the same reasoning leads to the conclusion that when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. . . .

8

(16)    Consistent with that consideration, the sentencing judge's statements in this case regarding the toll that testifying had on the victim were made within the broader context of discussing the victim's trauma.[44]  The court also identified other reasons for departing from the guidelines, including the array of tools that Rivera purchased and compiled for use in the kidnapping, the crime's psychological impact on the victim, and Rivera's phone search history—all of which are acceptable sentencing considerations.[45]  Rivera argues that the court's mention of his choice to go to trial when crafting its sentence illustrates a "theme of animus against" him.[46]

---

after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present."); *U.S. v. Ford*, 821 F.3d 63, 79 (1st Cir. 2016) (Holding the sentencing court did not abuse its discretion after remarking "[I]f you had been smarter about this, in my view, and you had either not testified falsely or alternatively looked at yourself hard in the mirror and said, I am going to follow my sons and not my husband, I won't go to trial on this, you would have been looking at a much lower guideline range."); *People v. Martinez*, 42 N.E.3d 196, 200 (N.Y. 2015) ("Defendant's rejection of the plea offer also required the victim to testify about the sexual abuse at trial, a factor this Court has recognized as a legitimate basis for the imposition of a more severe sentence after trial than that which the defendant would have received upon a plea of guilty."); *State v. Farnham*, 479 A.2d 887, 892–83 (Me. 1984) ("Although defendant had an absolute right to a trial and to conduct vigorous cross-examination in connection with a crime for which he soon after admitted his guilt, he cannot escape the fact that his exercise of those rights are probative of his attitude towards the victim. . . .There is a clear-cut distinction between enhancing a sentence because the convicted defendant insisted on a trial and considering that fact along with others in assessing how real is defendant's claim of remorse and reform at the time of sentencing."); *State v. Hayden*, 86 A.3d 1221, 1228 (Me. 2014) ("taken out of context, the court's statement that 'the evidence in this case was overwhelming, and [Defendant] forced [his son] to testify in a courtroom packed with strangers,' could be perceived as an unconstitutional punishment of [Defendant] for exercising his right to a trial by jury. The court's comment, however, was made in the larger context of a reference to a counselor's review of several factors that contributed to the child's psychological trauma and the court's apparent rejection of [Defendant]'s claim that he loved his son.").

[44] App. to Opening Br. at 99 ("I also note that the sentencing was not the result of a plea, but rather, after a full jury trial forcing not only Ms. Owens to take the stand and *relive the events of this day and the effects on her*") (emphasis added).

[45] App. to Opening Br. at A98–99.

[46] Opening Br. at 21.

The court, however, addressed several mitigating factors during sentencing and demonstrated concern for Rivera's future mental health rehabilitation, indicating that the court sentenced Rivera with an open mind and without any vindictiveness.[47]

(17)    Rivera also maintains that the court abused its discretion by failing to address in its Opinion its comment that the trial caused "the State to [expend] significant resources."[48]    Although the court did not specifically refer to its comments related to the State's resources, the Opinion clarifies that its comments relating to Rivera's choice to pursue trial were directed toward understanding the State's sentence recommendation, which the court later adopted.[49]

(18)    Because the trial court ultimately adopted the State's recommended Level V sentence term—the same sentence the State initially offered during the plea phase—it is difficult to conclude that the court penalized Rivera for asserting his

---

[47] App. to Opening Br. at A99 (Sentencing Tr.) ("There are some mitigating factors here, the fact that you have no prior convictions and that you have strong parental support.  I will also note for the record that the Court found that you were guilty but mentally ill."); *Id*. at A94–95 (Sentencing Tr.) ("And what about Mental Health Court? Is that something you will be seeking in terms of probation after he serves his sentence?").

[48] Opening Br. at 27.  Rivera raised this argument below in his Motion, although whether he was moving for a correction of his sentence based upon this comment or the court's comment in reference to Owen's being forced to testify is slightly unclear, "The Court's comments (*defendant caused a full jury trial forcing the victim to testify and the State to expend significant resources*) lead to an ineluctable conclusion that the Court impermissibly considered Defendant's election to exercise his constitutional right to a trial as a significant factor supporting his sentence."  App. to Opening Br. at A109 (Motion for Correction of Sentence).

[49] Superior Court Opinion at *3 ("the Court followed the State's recommendation and did not exceed SENTAC guidelines."); App. to Opening Br. at A83 (Sentencing Tr.) ("The State is asking the Court to impose ten years at Level V today.").

trial rights.[50]  If anything, the trial court's comments about the trial and its effects reflect the court's doubts about the sincerity of Rivera's expressions of remorse, which is a permissible consideration at sentencing.[51]  As such, the Superior Court did not abuse its discretion when it denied Rivera's Motion.

**B. The Superior Court did not rely on false factual predicates.**

(19)     Rivera next contends that the court abused its discretion because it impermissibly relied on the "kill list" in crafting Rivera's sentence.[52]  Rivera argues that reference to the "kill list" was improper because it: 1) was embellished by the investigating officer who found it, 2) amounted to uncharged conduct, and 3) was not "germane" to Rivera's convictions.[53]  These arguments are not supported by the law or the record.

(20)     This Court has held that, "a sentencing court has broad discretion in determining what information to rely on from a presentencing report and related sources."[54]  Further, "[s]entencing courts are specifically entitled to rely upon information regarding other, unproven crimes."[55]  Additionally, Rivera's argument that the "kill list" was not admitted as an exhibit and therefore not relevant to his

---

[50] This is especially so when the State acknowledged that it was not seeking an increased sentence because it did not want to impose a "trial tax" on Rivera.  App. to Opening Br. at A87 (Sentencing Tr.).

[51] 2021-22 SENTAC Benchbook at 109.

[52] The "kill list" refers to the two pieces of paper found in Rivera's car. *See* Supra ¶ 4.

[53] Opening Br. at 24.

[54] *Mayes*, 604 A.2d at 842.

[55] *Id.* at 842–43.

11

convictions is unavailing because the contents of the papers were read into the record by the investigating officer who found them, and therefore the relevant information was presented to the jury.[56]

(21) Additionally, "this Court will not find error of law or abuse of discretion unless it is clear from the record below that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicium of reliability."[57] Rivera does not persuasively argue that the "kill list" lacks a minimal indicium of reliability, only that the term is an "embellishment."[58] Finally, there is nothing from the face of the record that indicates the court relied on the "kill list" in crafting Rivera's sentence. The court merely mentioned the "kill list" once within the context of listing each piece of evidence found in Rivera's car and did not refer to it again during sentencing.[59] Accordingly, we affirm the Superior Court's Opinion denying Rivera's Motion.

### C. Rivera's Level IV probation term for the assault conviction exceeds the maximum sentence authorized by statute.

(22) Although not raised in Rivera's brief on appeal, his misdemeanor assault sentence must be remanded so that he can be resentenced consistent with 11 Del. C. § 4333(b).

---

[56] Opening Br. at 24; App. to Answering Br. at B21–25.
[57] *Mayes*, 604 A.2d at 843.
[58] Opening Br. at 24.
[59] App. to Opening Br. at A98–99 (Sentencing Tr.).

(23)    Under Section 4333(b), Assault Third Degree, a Class A misdemeanor, has a maximum probation term of 12 months.[60]   The court sentenced Rivera to serve 1 year at Level V suspended for 18 months at Level IV, suspended after six months for Level III for the assault conviction.  The 18-month Level IV term exceeds the statutory maximum allowed for the assault conviction.

(24)    Accordingly, we remand Rivera's assault conviction for resentencing consistent with this Order.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED and Rivera's sentence is REMANDED for correction of the probation sentence imposed for Cr. A. No. IN19091743. Jurisdiction is not retained.


BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[60] Section 4333(b) dictates:
(b) The length of any period of probation or suspension of sentence shall be limited to:
    (1) Two years, for any violent felony in this title as designated in § 4201(c) of this title;
    (2) Eighteen months, for any offense set forth in Title 16; or
    (3) One year, for any offense not otherwise specified in paragraph (b)(1) or (2) of this section.