IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARK COOLING, §
§ No. 383, 2022
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
§
v. § Cr. ID. Nos. 2107016981(S)
§ 2108009800 (S)
§
STATE OF DELAWARE, §
§
Appellee. §

Submitted: September 27, 2023
Decided: November 30, 2023

Before **SEITZ,** Chief Justice; **VALIHURA,** and **LEGROW,** Justices.

**ORDER**

Upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, Mark Cooling, appeals his sentence for stalking, criminal contempt of a protection from abuse order ("PFA"), and possession of a firearm by a person prohibited ("PFBPP"). The Superior Court sentenced Cooling to 12 years at Level V incarceration, suspended after 3 years for decreasing levels of supervision. Cooling raises four arguments on appeal. First, he argues that the Superior Court abused its discretion by failing to consider mitigating factors.

1

Second, he contends that the Superior Court did not properly balance the aggravating and mitigating factors. Third, he asserts that the Superior Court incorrectly applied two aggravating factors: repetitive criminal history and prior abuse of the victim. Fourth, he argues that his sentence is the product of judicial vindictiveness or bias. None of Cooling's arguments supports reversal of his sentence and we therefore affirm the Superior Court's sentencing order.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

(2) Cooling's convictions arose from domestic disputes with his then-wife, M.C.[2] According to M.C., Cooling began acting out of character in February 2021. He became fixated on her fidelity and repeatedly called her at work, searched her cell phone, and posted accusations of her unfaithfulness on social media. When Cooling's behavior continued to escalate, M.C. decided to take their two minor daughters and stay with her stepfather. When M.C. tried to leave their home, Cooling stood in the hallway with a gun in his hand and did not allow her to pass.

(3) After M.C. and the couple's children moved into her stepfather's residence, M.C. and her step-father found a GPS tracker on her car, a trail camera pointed at her step-father's house, and bent nails scattered at the end of the

---

[1] Because Cooling's convictions are the result of a plea, the factual background is drawn from the Presentence Investigative Report ("PSI").

[2] *See* D.I. 61 (order granting State's request to redact victim's name from appendix).

driveway.[3]  M.C. found documentation indicating the camera and tracker were registered to Cooling.[4]

(4)  Delaware State Police served Cooling with a PFA and a weapon relinquishment order on June 9, 2021.  Cooling told the executing officers that he had three firearms inside his home.  The officers then found two shotguns, a pistol, and a large, locked safe.  When the officers asked Cooling to open the safe, he denied having access to it or knowledge of its contents, alleging instead that M.C. had the key to the safe.  M.C. similarly denied having access to the safe, and both parties were advised not to contact the other until the matter was heard in court.  Officers advised Cooling that the PFA prohibited him from possessing firearms, and he would be arrested if caught with one.

(5)  In July 2021, notwithstanding the PFA, Cooling sent M.C. messages stating that he knew exactly where her head was on her pillow.  He also told M.C. their tombstones had already been made, and the last nice words they said to each other—"I do"—were written on them.

(6)  On July 30, 2021, New Castle County detectives apprehended Cooling with SWAT assistance.  During a search of Cooling's home, the officers discovered empty rifle cases, hunting paraphernalia, hundreds of rounds of ammunition, and a

---

[3] App. to Opening Br. at A50 (PSI).
[4] *Id.*

3

large gun safe. Cooling again denied having access to the safe and encouraged the officers to "go ahead and destroy it."[5] When the officers opened the safe, they found 43 firearms inside.

(7) In April 2022, M.C. submitted to police several documents handwritten by Cooling. His writings contained names, addresses, and vehicle information of people M.C. knew.

(8) On October 8, 2021, a grand jury indicted Cooling on 42 counts of PFBPP, one count of possession of ammunition by a person prohibited, one count of criminal contempt of a PFA, and one count of harassment. Later, as part of plea negotiations, the State added by Attorney General Information one count of stalking.

(9) On June 16, 2022, Cooling pleaded guilty to one count of PFBPP, one count of criminal contempt of a PFA, and one count of stalking. The SENTAC presumptive sentence for PFBPP is up to 12 months of probation.[6] For criminal contempt, the guidelines recommend a presumptive sentence of up to 12 months of Level II probation.[7] Stalking, a Class F violent felony in this case, requires a six-month minimum mandatory term of imprisonment and has a presumptive sentence of up to nine months of Level V incarceration.[8]

---

[5] *Id*. at A49.

[6] 2021–22 SENTAC Benchbook at 50. The statutory maximum for PFBPP is eight years at Level V. *Id*.

[7] *Id*. at 73. The statutory maximum for criminal contempt of a domestic violence protective order is one year at Level V and up to a $2,300 fine. *Id*.

[8] *Id*. at 59. The statutory maximum for stalking is three years at Level V. *Id*.

4

(10)   Cooling stated in his presentence interview he "would like to tell everyone he is sorry," but he "doesn't know what he should feel remorseful for."[9] Cooling met with two different mental health counselors while incarcerated but stated the counselors did not see a need to meet with him regularly.

(11)   In its sentencing memorandum and at sentencing, the State read M.C.'s victim impact statement in which she described fearing for her and her children's lives because of Cooling's conduct.  At sentencing, the Superior Court agreed with the five aggravating factors submitted by the State[10]: 1) lack of remorse; 2) undue depreciation of the offense; 3) repetitive criminal conduct; 4) prior abuse of the victim; and 5) need for correctional treatment.[11]  In spite of the aggravating factors the State advocated, neither Cooling nor his counsel suggested any mitigating factors for the court's consideration.  The Superior Court then sentenced Cooling as follows: three years Level V, suspended after two years for stalking; eight years Level V suspended for two years Level III for PFBPP; and one year Level V followed by one year Level III for criminal contempt of a PFA.  Before announcing its sentence, the court noted its consideration of Cooling's "personal and criminal history, the

[9] App. to Opening Br. at A53 (PSI).
[10] App. to Answering Br. at B24–29 (State's Sentencing Memorandum).
[11] App. to Opening Br. at A129 (Sentencing Tr.).

circumstances that the incident invented," and the comments made by both attorneys as well as Cooling himself.[12]  On October 14, 2022, Cooling filed a notice of appeal.

## ANALYSIS

(12)  This Court reviews a criminal sentence for abuse of discretion.[13] Appellate review of sentences that do not exceed statutory limits is "extremely limited."[14]  A sentencing court abuses its discretion when the sentence "is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[15]  A sentencing court exhibits a closed mind when the court bases its sentence on a preconceived bias without considering the offense's nature or the defendant's character.[16]

(13)  Cooling argues that the court sentenced him with a closed mind because the record does not support a sentence that exceeds the SENTAC guidelines.[17] Cooling contends that his sentence was the product of judicial bias and a closed mind because the court: 1) did not consider mitigating factors, 2) raised—*sua sponte*— two additional aggravating factors, 3) misapplied an aggravating factor, and 4) considered uncharged conduct and evinced vindictiveness toward Cooling by taking

[12] *Id*. at A128.
[13] *Kurzman v. State,* 903 A.2d 702, 714 (Del. 2006).
[14] *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992).
[15] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).
[16] *Id*.
[17] Opening Br. at 11.

into account conduct for which he did not plead guilty.[18]  For the reasons explained below, we affirm Cooling's sentence.

**A. The Superior Court did not abuse its discretion by not considering mitigating factors.**

(14)   Cooling first argues that the Superior Court abused its discretion by failing to consider "even a single" mitigating factor.[19]  He contends that his counsel presented the following mitigating factors: his apology, his acceptance of responsibility, his drug use, and his long-term employment.  On the contrary, although Cooling's counsel presented Cooling's side of the story, counsel made no reference to any mitigating factor at any time during sentencing.[20]  Further, the court specifically stated that it had taken into account all the evidence and comments submitted by the parties.[21]  The court therefore did not abuse its discretion by not expressly citing or finding any mitigating factors.

**B. The Superior Court did not abuse its discretion by not balancing aggravating and mitigating factors.**

(15)   Cooling next contends that the Superior Court abused its discretion because it did not balance the aggravating and mitigating factors.  But, as discussed,

---

[18] *Id*. at 11–12.

[19] *Id*. at 12.

[20] *See generally* App. to Opening Br. at A121–27 (Sentencing Tr.).

[21] *Id*. at A128 ("the Court has considered the presentence report in this case, your personal and criminal history, the circumstances that the incident invented, the comments of both attorneys today, letters on your behalf, the victim's impact statement, the State's presentence memorandum as well as your comments, your interview comments and your comments that you made here today.").

Cooling did not provide the court with any mitigating factors to weigh against the aggravating factors.[22] Cooling also posits that the court abused its discretion when it exceeded the SENTAC presumptive sentence for each count without reviewing aggravating factors, but the court expressly found five aggravating factors before imposing the sentence. Those aggravating factors justified the court's decision to exceed the SENTAC guidelines.

## C. The Superior Court's misapplication of one aggravating factor was harmless error.

(16) Cooling next argues that the court abused its discretion by finding two aggravating factors that do not apply to his case. Cooling contends that the court should not have considered repetitive criminal conduct and prior abuse of the victim as aggravating factors. As to the first factor, Cooling argues it was a misapplication, and, as to the second factor, he contends that the court abused its discretion in citing it because "the charged offenses were the first charges ever brought against [Cooling] regarding this victim."[23]

---

[22] Cooling further argues that the court exhibited bias against him when it raised two aggravating factors *sua sponte*. This argument, however, is not supported by the record because the State's sentencing memorandum asked the court to consider all five of the aggravating factors the court cited. Moreover, nothing prevents the court from considering additional aggravating factors not previously suggested by counsel. *See Mayes*, 604 A.2d at 842. ("a sentencing court has broad discretion in determining what information to rely on from a presentencing report and related sources.").

[23] Opening Br. at 12–13.

(17)  Although Cooling does not expand upon his contention that the repetitive-criminal-conduct factor was misapplied, we assume that his argument is grounded in the SENTAC Benchbook's definition of the factor.  The Benchbook defines "repetitive criminal conduct" as a "conviction or adjudication for the same or similar offense on two or more previous occasions."[24]  That definition is subject to the following policies: "only those offenses adjudicated at age 14 or older shall be counted in prior history" and "a conviction-free period of ten (10) years after final release from incarceration, or from date of sentence if only probation at Levels I through IV was ordered, shall be sufficient to 'wash' the criminal history prior to that date."[25]  Class A and B felonies are excluded from the latter policy.[26]

(18)  As the State notes, Cooling's criminal history is extensive.[27]  Contrary to the State's argument, however, none of Cooling's previous convictions are for crimes that are the "same or similar" to those to which he pleaded guilty in this case.[28]  Under the SENTAC guidelines, the repetitive-criminal-conduct factor only would apply to Cooling if (i) he previously had been convicted of crimes similar to those for which he was being sentenced, and (ii) those convictions were either Class A or B felonies or had not been "washed" by a ten-year conviction-free period.  None

---

[24] 2021–22 SENTAC Benchbook at 25.
[25] *Id*. at 24.
[26] *Id*.
[27] *See* App. to Opening Br. at A58–108 (PSI).
[28] Answering Br. at 10.

of Cooling's previous convictions fit those criteria.[29]  The State also argued in its sentencing memorandum that the 41 firearms recovered in Cooling's home for which he did not plead guilty should support application of the repetitive-criminal-conduct aggravating factor, but Cooling was not *convicted* of these crimes, and the factor therefore does not apply.[30]

(19)   Cooling's position regarding the repetitive-criminal-conduct factor has some merit.  Ultimately, however, the court's misapplication of the factor amounted to harmless error because the court cited other aggravating factors that justify the sentence imposed.[31]

(20)   As to the prior-abuse-of-the-victim factor, the court did not abuse its discretion in applying this factor because, unlike repetitive criminal conduct, prior

---

[29] Cooling's previous convictions include: various misdemeanor traffic offenses. App. to Opening Br. at A91–105; reckless endangering second degree from 2010 (Class A misdemeanor). *Id.* at A95; 11 Del. C. § 603; offensive touching from 1995 (unclassified misdemeanor or Class A misdemeanor). App. to Opening Br. at A99–100; 11 Del. C. § 601; Assault third degree from 1995 (Class A misdemeanor). App. to Opening Br. at A100; 11 Del. C. § 611; disorderly conduct from 1995 (unclassified misdemeanor). App. to Opening Br. at A100; 11 Del. C. § 1301(1)(b); resisting arrest from 1994 (Class A misdemeanor). App. to Opening Br. at A102; 11 Del. C. § 1257(b); and carrying a concealed dangerous instrument from 1993 (Class A misdemeanor). App. to Opening Br. at A102; 11 Del. C. § 1443. Stalking is a Class F felony where, as here, the defendant violates any order prohibiting contact with the victim. 11 Del. C. § 1312(c)(2). Possession of a Firearm by a person prohibited is a Class D felony. 11 Del. C. § 1448(c). Criminal Contempt of a PFA is a class A misdemeanor. 11 Del. C. § 1271A(b).  App. to Opening Br. at A91–92 (Cooling has three driving offenses from 2017, 2018, and 2021: two convictions for inattentive driving and one for speeding).

[30] App. to Opening Br. at A117 (Sentencing Tr.); App. to Answering Br. at B24 (State's Sentencing Memorandum).

[31] *See supra* note 11.

abuse of the victim does not require previous convictions or charges.[32]  Here, the victim impact statement, presentence report, and even Cooling's own counsel's remarks provided the court with sufficient factual predicates to justify applying this factor in Cooling's sentence.  Because Cooling does not argue—and there is nothing in the record to support the contention—that these factual predicates lack a minimum indicia of reliability, the court was free to rely on them when crafting its sentence.

### D. The Superior Court did not demonstrate vindictiveness or bias.

(21)  Finally, Cooling argues that the court exhibited vindictiveness and bias against him by considering: 1) criminal conduct to which he did not plead guilty, and 2) other "outrageous" personal conduct.[33]  Cooling further contends that the court displayed a vindictive demeanor when it failed to explain its departure from the SENTAC presumptive sentence.  Because the court stated its reasons for departing from the presumptive sentence, it did not abuse its discretion in this regard.[34]

(22)  Cooling relies on *Tramill v. State*[35] to argue that the court was required to state, in detail, the reasons why the criminal charges justified a departure from the SENTAC presumptive sentence.  Cooling also argues that *Tramill* supports the

---

[32] 2021–22 SENTAC Benchbook at 109 (Prior abuse of the victim is defined as "[o]n prior occasions, the defendant has harassed, threatened, or physically abused the victim of the current offense.").

[33] Opening Br. at 17.

[34] App. to Opening Br. at A129. (Sentencing Tr.).

[35] *Tramill v. State*, 425 A.2d 142 (Del. 1980).

11

proposition that the court demonstrated bias and vindictiveness by relying on conduct not related to his convictions when crafting his sentence. Not so. The *Tramill* Court remanded a sentence so the judge could state, on the record, the reasons it increased the defendant's sentence after the defendant was convicted following an appeal and retrial.[36] Under those circumstances, the trial judge was required to make certain specific findings. This case is procedurally distinct and there is no indication that the court sentenced Cooling with any vindictiveness.

(23) This Court recently held that imposition of the maximum sentence, standing alone, does not demonstrate bias or vindictiveness.[37] Additionally, sentencing courts are free to consider uncharged conduct and have broad discretion as to what conduct they consider when crafting a sentence.[38] The court therefore was free to consider the numerous PFBPP counts that the State dismissed in exchange for Cooling's plea.[39] The court also could consider Cooling's statement to the presentence investigator that he "doesn't know what he should be remorseful for."[40] Further, as we discussed above, the court identified several aggravating factors that justified exceeding the SENTAC presumptive sentence.[41] The court also

---

[36] *Id*. at 143.
[37] *White v State*, 813 A.2d 1142, 2002 WL 31873703 at *2 (Del. Dec. 20, 2022) (TABLE).
[38] *Hickman v. State*, 100 A.3d 1021, 2014 WL 4463142 at *3 (Del. Sept. 10, 2014) (TABLE); *Mayes*, 604 A.2d at 842.
[39] App. to Opening Br. at A22–44 (Indictment).
[40] *Id*. at A53 (PSI).
[41] *Id*. at A128–29 (Sentencing Tr.).

cited its concern regarding Cooling's ex-wife's safety,[42] but ultimately sentenced Cooling to less Level V time than the State recommended.[43] Finally, the court stated on the record that it had considered all comments and information provided to it.[44] Cooling therefore has failed to demonstrate that his sentence was the product of vindictiveness, bias, or a closed mind.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[42] *Id*. at A120 (Sentencing Tr.); *Id*. at A129.

[43] Opening Br. Ex. F at 1–2; App. to Answering Br. at B22 (State's Sentencing Memorandum) (State recommended a total of four unsuspended years at Level V, court imposed three unsuspended years at Level V); *see also* App. to Opening Br. at A118 (Sentencing Tr.).

[44] App. to Opening Br. at A128 (Sentencing Tr.) ("the court has considered the presentence report in this case, your personal and criminal history, the circumstances that the incident invented, the comments of both attorneys today, letters on your behalf, the victim's impact statement, the State's presentence memorandum as well as your comments, your interview comments and your comments that you made here today.").