NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1880
_____

HERO TIERA TRAMAINE SMITH, f/k/a Tiera Tramaine Smith,
Appellant

v.

WARDEN BAYLOR WOMENS CORRECTIONAL INSTITUTION; ATTORNEY
GENERAL DELAWARE
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. No. 1-18-cv-0123)
District Judge: Honorable Maryellen Noreika
_____

Argued
November 1, 2023

Before: JORDAN, ROTH, and AMBRO, *Circuit Judges*

(Filed: February 27, 2024)
_____

Thomas A. Dreyer [ARGUED]
30 Running Brook Road
Glen Mills, PA 19342
*Counsel for Appellant*

Kathryn J. Garrison   [ARGUED]
Office of Attorney General of Delaware
Delaware Department of Justice
102 W. Water Street
3rd Floor
Dover, DE   19904
    *Counsel for Appellees*

_____

OPINION[*]

_____

JORDAN, *Circuit Judge*.

Hero Tiera Tramaine Smith ("Smith") challenges the District Court's dismissal of her petition for a writ of habeas corpus under 28 U.S.C. § 2254.  After assuming, without deciding, that Smith was entitled to equitable tolling, the District Court denied her petition on the merits.  Both Smith and the State of Delaware agree that the District Court misapplied the applicable law for determining whether the assistance Smith's counsel rendered was ineffective, as the Court did not consider the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).  But, regardless of the merits, the District Court erred in reaching the merits without first addressing whether Smith was entitled to equitable tolling, so we will remand.

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

## I. BACKGROUND[1]

### A. The Underlying Crime

In July 2007, CJ Smith ("CJ"), no relation to the defendant-appellant here but an acquaintance and sometimes a drug source for her, drove with some friends to an apartment complex in Seaford, Delaware. As he was arriving, Smith, who was then 19 years old, was driving out. When they saw each other, they stopped their cars side-by-side, with the cars facing opposite directions, and argued about an altercation they had had the previous day. Within a minute, Smith pulled a gun out from under her seat, got out of her car, walked to CJ's car, and shot him three times at close range, killing him. She then immediately got back into her car and sped off, almost running over a construction worker in the process. The shooting was recorded by the apartment complex's surveillance equipment and was witnessed by CJ's girlfriend, who was in CJ's car in the passenger seat, his two friends in the backseat, and multiple construction workers. Smith boarded a bus and fled the state. She was later arrested in Georgia.

### B. Guilty Plea and Sentencing

A Delaware grand jury indicted Smith on one count each of first-degree murder, first-degree assault, and possession of a deadly weapon by a person prohibited, as well as two counts of first-degree reckless endangering, and four counts of possession of a

---

[1] These facts come from the Superior Court of Delaware's memorandum opinion denying Smith postconviction relief and the District Court's memorandum opinion denying Smith habeas relief. *State v. Smith*, 2017 WL 902149 (Del. Super. Ct. Mar. 6, 2017); *Smith v. Caple*, No. CV 18-123 (MN), 2021 WL 1226495 (D. Del. Mar. 31, 2021)

firearm during the commission of a felony. Smith was represented by an attorney ("trial counsel") with the Office of the Public Defender and, in consultation with that attorney, pled guilty to second-degree murder, first-degree assault, and two counts of possession of a firearm during the commission of a felony. The State of Delaware dismissed the remaining charges.

Prior to sentencing, the Delaware Superior Court ordered a presentence investigation report. That report described Smith's exposure to violence in her childhood and adolescence, her repeated molestation as a child, her victimization in two armed robberies, and her mother's severe mental health challenges and drug history. At sentencing in December 2008, the judge explained the sentence he was about to impose:

> Ms. Smith, you certainly have not made much of your life. You quit school after completing the eighth grade. Your work history is extraordinarily brief. You spent your days drinking alcohol, using drugs, selling drugs, and generally wasting your time in the life that you were given. And to protect your drug trade, you carried a loaded gun in your car. And not surprisedly, [sic] that created a huge problem and resulted in the senseless death of Mr. Smith.
>
> I have absolutely no reason to believe that you would ever be a productive citizen if given freedom. Indeed, I have every reason to believe it's quite the opposite, quite frankly, that you will return to your ways and will be a danger to some other person who might encounter you.

(App. at 44, 80-81.) The judge then sentenced Smith to the statutory maximum term of life imprisonment without the possibility of parole, plus 75 years' imprisonment.

C.     **Procedural History – Postconviction Relief**

On January 5, 2009, Smith timely appealed pro se to the Supreme Court of Delaware. She says that she had not had any communication from trial counsel between

4

her sentencing hearing on December 5, 2008, and her pro se appeal. In addition to filing her appeal, she also sent trial counsel a letter asking him to help her file a motion to modify her sentence before the 90-day deadline for such a motion passed, and she asked him to let her know any other steps she could take to get her sentence overturned or reduced. On January 6, 2009, the Delaware Supreme Court, through its clerk's office, instructed trial counsel to file a written statement by January 16, 2009, "indicating that [he] recognize[d] [his] continu[ed] obligation under Supreme Court Rule 26(a) to represent Ms. Smith in the … appeal." (App. at 55.) A copy of the letter was sent to Smith, who then sent trial counsel a letter dated January 7, 2009, in which she referred to the Court's letter and told him that she needed his assistance and hoped that he would prepare himself to help her. Smith contends trial counsel never responded to the Supreme Court letter, and there is nothing in the record to suggest otherwise.

Still, on January 27, 2009, trial counsel did meet with Smith via video conference. In his affidavit, he testified that, during their discussion, "it was determined that [Smith] was, in fact, seeking a reduction in sentence and was not seeking review of any errors of law or procedure. Accordingly, on advice of counsel, [Smith] decided to withdraw the appeal and pursue the Motion for a Modification in [an] effort to reduce her sentence." (App. at 72.) Smith executed an Affidavit Requesting Dismissal of Appeal. According to Smith, trial counsel "gave her only 20 minutes" to decide whether to sign it. (Opening Br. at 25.) Whether that affidavit had been prepared in advance or was drafted on the spot or right after is not clear. What is clear is that just two days later, on January 29,

5

2009, trial counsel filed a motion to dismiss the appeal, along with the supporting affidavit, and, consequently, the Delaware Supreme Court granted the motion and closed the case.

About a month later, trial counsel filed a motion for a reduction of sentence in the Superior Court before the same judge who had originally sentenced Smith. Smith claims that counsel did not send her a copy of it. The trial court acted quickly, denying the motion the following month. Smith alleges that, once again, trial counsel was uncommunicative, failing to send her the order or otherwise to tell her about it. Nor did he consult with her about appealing the denial. Having not heard from trial counsel since their January 27 video conference, Smith says that in June she found a copy of the order denying her a sentence reduction, but, by then, it was too late for an appeal.

Years passed. Then, in April 2014, Smith filed a pro se motion for state postconviction relief. New counsel was appointed to represent her, and in June 2015 that counsel filed an amended motion. The Superior Court held an evidentiary hearing, and denied Smith's motion and amended motion for postconviction relief.[2] *State v. Smith*, 2017 WL 902149, at *1, 25 (Del. Super. Ct. Mar. 6, 2017). On January 2, 2018, the

---

[2] Smith's motion for state postconviction relief was untimely under Delaware law, Del. Super. Ct. Crim. R. 61(i)(1), and, therefore, procedurally barred unless it fell under an exception in Delaware's rules. *Smith*, 2017 WL 902149, at *1. The postconviction court held that it fell under the exception for a "colorable claim that there was a miscarriage of justice" and so could be heard on the merits. *Id.* at *2.

Delaware Supreme Court affirmed the denial. *Smith v. State*, 177 A.3d 613 (Del. 2018) (Table).

Within two weeks, Smith filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court for the District of Delaware. The District Court denied the petition without a hearing, and Smith appealed that denial. We treated her notice of appeal as a request for a certificate of appealability and ordered the State "to show cause within thirty (30) days why a certificate of appealability should not be granted with respect to Smith's claim that counsel was ineffective for advising her to withdraw her direct appeal." (App. at 110-11.) The State then filed a response, and we granted the certificate of appealability.

## II.    DISCUSSION[3]

### A.    Federal Habeas Statute of Limitations

Before assessing the merits of Smith's petition, we must consider whether Smith's petition is time-barred under the limitations period prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), or whether that period is subject to tolling.

---

[3] The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253(c)(1). "Because the District Court ruled on [Smith's] habeas petition without conducting an evidentiary hearing, our review of its legal conclusions is plenary." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). "Accordingly, we will review the state courts' determinations under the same standard that the District Court was required to apply." *Id.* (internal quotation marks omitted). Our review of the alleged procedural default related to Smith's timeliness in filing her § 2254 petition is also plenary. *Hull v. Kyler*, 190 F.3d 88, 97 (3d Cir. 1999).

An application for a writ of habeas corpus like Smith's must be filed within one year of the finality of the state court action at issue. 28 U.S.C. § 2244(d)(1)(A).[4] However, "[t]he time during which a properly filed application for State post-conviction or other collateral review … is pending" is not counted toward that one-year period. *Id.* § 2244(d)(2). Further, "the limitations provision of the AEDPA is not jurisdictional in nature." *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). Therefore, "[a] petitioner can seek tolling in two ways: (i) statutory tolling under § 2244(d)(2), or (ii) equitable tolling." *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

"[B]ecause the AEDPA limitations period is subject to equitable modifications such as tolling, it is also subject to other non-jurisdictional, equitable considerations, such as waiver." *Robinson*, 313 F.3d at 134. Thus, a state can waive its AEDPA limitations defense. *See id.* In this case, however, the State did not waive the defense; it affirmatively raised it in its initial response in the District Court.

Unless tolled, the one-year period obviously expired long ago. Smith's opportunity for appeal lapsed in 2010, but she did not file her pro se habeas petition until January 2018. Therefore, her § 2254 petition is time-barred and the District Court should

---

[4] The relevant provision states,

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from … the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d)(1)(A). Accordingly, the one-year limitations period began when Smith's conviction became final.

have dismissed it if there is no basis for statutory or equitable tolling. *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

### 1.     Smith's petition cannot be statutorily tolled.

Smith argues that her petition should be statutorily tolled under § 2244(d)(2) because the state court determined that her motion for state post-conviction relief ("PCR motion") was "properly filed[.]"  But even assuming that her PCR motion was "properly filed" in state court, it cannot toll the limitations period under § 2244(d)(2) because it was not filed – and so did not begin to be pending – until long after the limitations period had already expired.  Put another way, the PCR motion could not toll the limitations period because, by the time it was filed, there was no longer any limitations period left to toll.

It may be that, in one sense, Smith's state post-conviction relief petition was "properly filed" because, despite being untimely under the pertinent limitations period for postconviction relief, the court that entertained her petition permitted it under an exception to the state's usual timeliness rule. *See Merritt v. Blaine*, 326 F.3d 157, 163 (3d Cir. 2003) ("When determining if a state petition is 'properly filed,' we must focus on the 'state law governing when a petition for collateral relief is properly filed.'" (quoting *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001))).  Smith argues "a post-conviction relief petition is pending until it has achieved final resolution through the State's post-conviction procedures; i.e., until the completion of that process."  (Reply Br. at 5 (citing *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002)).)  According to her, "[t]he time during which the PCR Motion was pending; i.e., until January 2, 2018, is statutorily tolled and is

9

not counted toward the one-year period of limitation outlined in Section 2244(d)(1)." (Reply Br. at 5.) But her focus on the expiration of what she considers as the statutory tolling period is misplaced. Statutory tolling for habeas purposes remains unavailable to Smith because she filed her state PCR petition after the federal one-year limitations period had expired.

Critically, Smith fails to address the start of the alleged pending period for statutory tolling purposes – the date on which the PCR motion was filed. By ignoring that, she seems to imply that the PCR motion was somehow "pending" since before it was ever filed. She has, of course, failed to cite anything in support of that position, because there is none. When asked about that logical lacuna during oral argument, her attorney still could not provide any explanation for it. Following oral argument, Smith sent us a Rule 28(j) letter in which she reiterates her argument that her PCR petition was "properly filed", but she still fails to present any logical or legal support for her implication that her PCR petition could have been pending even before it was filed.

The bottom line is simple: that the PCR petition was permitted under the state's exceptions to the state's limitations period does not change the rules governing the federal limitations period. While it may be relevant to equitable tolling, there is nothing to suggest that it has any bearing on statutory tolling under § 2244(d)(2). *See Holland v. Florida*, 560 U.S. 631, 649-50 (2010) (holding that "§ 2244(d) is subject to equitable tolling" and "[e]quitable tolling … asks whether federal courts may excuse a petitioner's

10

failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law.").

### 2. We cannot determine whether Smith is entitled to equitable tolling.

Because statutory tolling cannot save Smith's petition, her petition is untimely unless she qualifies for equitable tolling. *See id.*, at 649. "[A] petitioner is entitled to equitable tolling only if [she] shows (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Id.* at 649 (internal quotation marks omitted). "This conjunctive standard requires showing both elements before we will permit tolling." *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012).

The District Court stated that it was "inclined to concur" with the State's assertion that Smith failed to demonstrate how her trial counsel's actions prevented her from timely filing her habeas petition. (App. at 20.) But it refrained from making findings concerning either of the prongs required for equitable tolling, and instead addressed Smith's claims on the merits. Because the State raised a limitations defense, the District Court should have first addressed both the diligence and extraordinary circumstances prongs of the equitable tolling test to assess whether Smith is entitled to equitable tolling, *cf. Sistrunk*, 674 F.3d at 190 (requiring a showing of both elements before equitable tolling can be permitted), as she may well be, and which is of importance here since the merits of her claim are not frivolous.

11

The District Court correctly identified that there are cases in which "an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes." *Smith v. Caple*, No. CV 18-123 (MN), 2021 WL 1226495, at *7 (D. Del. Mar. 31, 2021) (citing *Holland*, 560 U.S. at 635-54). It explained,

> An "egregious error" generally includes instances where an attorney fails to file an appeal after an explicit request from the petitioner, *see Velazquez v. Grace*, 277 F. App'x 258 (3d Cir. 2008), "affirmatively deceives the petitioner about filing a direct appeal," or "persistently neglects the petitioner's case." *Schlueter v. Varner*, 384 F.3d 69, 76-77 (3d Cir. 2004).

*Caple*, 2021 WL 1226495, at *7.

Smith's trial counsel's advice to withdraw her appeal could qualify as a similarly extraordinary circumstance for equitable tolling purposes. It appears from the pleadings that Smith's trial counsel essentially abandoned her following her sentencing hearing, a proceeding at which she received a life sentence, the statutory maximum penalty. He eventually met with her virtually, but only after Smith filed her pro se appeal and the Delaware Supreme Court reminded him of his continuing obligations to his client. At that point he affirmatively advised Smith to withdraw her appeal and, instead, to seek a sentence reduction – this despite the fact that the motion would be presented to the same judge who had originally sentenced her. There does not appear to be any reasonable explanation for the course of action he advised. Smith was not faced with a binary decision to seek a sentence reduction *or* continue with the appeal. *See* Del. Super. Ct. Crim. R. 35(b) ("The [sentencing] court may decide the motion [for a sentence reduction] or defer decision while an appeal is pending."). The avenues were not mutually

12

exclusive, so not only was it entirely permissible to seek both forms of relief, it was the reasonable and obviously advisable thing to do. And considering that Smith had already been sentenced to the maximum possible penalty and was destined to spend the rest of her natural life in prison, it is also obvious that her attorney should have advised her to maintain her appeal rather than withdraw it and seek a sentence modification from the judge who had imposed her sentence in the first place.

Further, the record suggests there were nonfrivolous grounds to support such a direct appeal. Under Delaware law, when a sentence does not exceed the statutory maximum, as was the case for Smith, appellate review is limited to whether the sentencing court abused its discretion by basing the sentence on judicial bias or vindictiveness, a closed mind, or facts that are false, impermissible, or unreliable. *Weston v. State*, 832 A.2d 742, 746 (Del. 2003). A judge sentences with a closed mind if he does not consider the nature of the offense and the character of the defendant. *Id*.

Smith's postconviction counsel argued that the sentencing judge acted with a closed mind and that it was not until the postconviction decision, which, again, was rendered by the same judge who sentenced her, that her arguments about the judge's closed mind were finally addressed. *State v. Smith*, 2017 WL 902149, at \*20-22 (Del. Super. Ct. Mar. 6, 2017). None of the reasoning given for the denial of postconviction relief had been given at Smith's sentencing nor included in the sentencing order. Smith's trial counsel could have raised the very same "judicial bias" or "closed mind" arguments on direct appeal. He didn't, and instead advised Smith to withdraw her appeal and pursue

13

the motion for a sentence reduction. And in that motion he made the very same arguments that had failed to persuade the very same judge shortly before, and which resulted in the statutory maximum sentence of life imprisonment plus 75 years. Considering that even an enormous reduction of 75 years would still have left Smith with life imprisonment, it is, on this record, difficult to fathom how the advice to withdraw Smith's appeal and instead pursue only a motion for a reduced sentence can be called reasonable.

Trial counsel's advice to withdraw the appeal certainly appears to be the type of indefensible lawyering that could constitute an extraordinary circumstance for the purposes of equitable tolling. *See Holland*, 560 U.S. at 651-52. But whether Smith was reasonably diligent in pursuing her rights – the other prong of equitable tolling – is unclear based on the record before us and requires fact finding that should be undertaken by the District Court. We can only speculate about the delay, and we decline to do that, so we will remand.

Should the District Court find that Smith is entitled to equitable tolling, then it will need to decide the merits of her ineffective assistance of counsel ("IAC") claim. We therefore also address the appropriate analysis under the circumstances of Smith's claim.

**B.    The Correct Application of the *Strickland* Standard**

To succeed on an IAC claim, a petitioner must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.

14

*Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).  There is a "strong presumption" that counsel's conduct was reasonable, and we evaluate conduct "from counsel's perspective at the time."  *Id.* at 689.

When the basis for a petitioner's IAC claim is a failure to appeal, however, "a more specific version of the *Strickland* standard" established by the Supreme Court in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), applies.  *Harrington v. Gillis*, 456 F.3d 118, 125 (3d Cir. 2006).  In *Flores-Ortega*, the Supreme Court held that, when considering whether counsel performed deficiently by not filing a notice of appeal, the court must first ask "whether counsel in fact consulted with the defendant about an appeal."  528 U.S. at 478.  If he did so, then he performed in a professionally unreasonable manner if he failed to follow the defendant's express instructions with respect to the appeal.  *Id.*  If he did not consult with the defendant, we must examine whether that failure to consult constitutes deficient performance.  *Id.*  We believe the same reasoning and rule applies to abandonment of an appeal.  "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal … or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id.* at 480.

To show prejudice in such cases, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Id.* at 484.  "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant … expressed a desire to appeal" is

15

often "highly relevant" to showing that counsel performed deficiently, and that the defendant was prejudiced; however, a defendant is not required to show that his appeal would have had merit. *Id.* at 485–86; *see also id.* at 486 ("It is unfair to *require* an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit").

Under 28 U.S.C. § 2254(d)(1), a state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Here, no Court discussed or acknowledged *Flores-Ortega* in analyzing whether Smith's trial counsel was ineffective for advising her to withdraw her appeal.[5] The Delaware Superior Court focused on the merits of Smith's appeal, rather than her right to appeal, in determining whether trial counsel was ineffective, *Smith*, 2017 WL 902149, at *20, and the Delaware Supreme Court "affirmed on the basis of and for the reasons assigned by the Superior Court in its … opinion[.]" *Smith v. State*, 177 A.3d 613, 2018 WL 266838, at *1 (Del. Jan. 2, 2018) (Table). The District Court adopted the same framing. *Caple*, 2021 WL 1226495, at *12. The State concedes that, in doing so, those courts "missed an important principle underlying the reasoning of *Flores-Ortega* – that the accused has the

_____

[5] The State admitted during oral arguments that *Flores-Ortega* was not raised in the parties' briefing with the state courts or District Court and that it had been unaware of the different standard before this appeal.

16

ultimate authority to make the fundamental decision whether to take an appeal." (Answering Br. at 34.) Under the circumstances, the Delaware courts' framing of Smith's counsel's actions was an unreasonable application of *Strickland*, because it ignored the clearly established Supreme Court precedent in *Flores-Ortega*, 528 U.S. at 480, and, therefore, receives no deference. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 413.

The issue thus becomes 1) whether trial counsel's advice to withdraw the appeal was unreasonable and 2) whether Smith was prejudiced. *See Strickland*, 466 U.S. at 687-88, 694; *Flores-Ortega*, 528 U.S. at 478, 484. As to *Strickland*'s second prong, not only would Smith have appealed but for counsel's advice, she *did* appeal – without his help – before he suggested withdrawing the appeal. Therefore, the prejudice prong of *Strickland* is clearly established in these circumstances, 528 U.S. at 484, and the remaining merits question is whether Smith's trial counsel's performance, in advising her to withdraw her appeal, was unreasonable. *Id.* at 478, 485-46. The same actions and reasoning that may form the requisite extraordinary circumstances required for equitable tolling may also inform whether her attorney's counsel was objectively unreasonable under the first *Strickland* prong.

However, we need not decide that in the first instance because, as discussed above, the District Court must first address the threshold question of whether Smith was reasonably diligent in pursuing her rights, such that she is entitled to equitable tolling for her untimely § 2254 petition.

17

**III.    CONCLUSION**

For the foregoing reasons, we will vacate the District Court's dismissal of Smith's § 2254 petition and remand for the Court to consider whether Smith is entitled to equitable tolling and, if so, to address the merits of her claim for ineffective assistance of counsel.